Theresa M. HOTTENROTH, Petitioner-Appellant,†

v.

Cyril M. HETSKO, Respondent-Respondent.

Court of Appeals

*No. 2005AP1212. Submitted on briefs August 8, 2006.
—Decided November 30, 2006.*

**2006 WI App 249**

(Also reported in 727 N.W.2d 38.)

† Petition to review denied.

204

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Shawna L. Lee* and *Raymond E. Krek*, of *Krek & Associates, S.C.*, Jefferson.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Michael S. Heffernan* and *Allan R. Koritzinsky*, of *Foley & Lardner LLP*, Madison.

Before Lundsten, P.J., Dykman and Vergeront, JJ.

¶ 1. VERGERONT J. Theresa Hottenroth appeals the judgment granting a divorce from Cyril Hetsko. She also appeals the order denying her post-judgment mo-

tions for relief from the judgment and for reconsideration. The judgment of divorce incorporated numerous stipulations of the parties. The issues on appeal are whether the circuit court erred by: (1) refusing to allow Hottenroth to withdraw from one stipulation before court approval; (2) refusing to allow her to withdraw from all stipulations, as a matter of right, after court approval but before entry of the written judgment; (3) denying her post-judgment motions for relief under WIS. STAT. § 806.07[1] and for reconsideration; (4) failing to conduct a sufficient inquiry before approving the stipulations; and (5) ordering her, on the ground of overtrial, to contribute to Hetsko's attorney fees and pay all guardian ad litem fees for the post-judgment motions.

¶ 2. We conclude as follows. (1) The circuit court's factual determination that neither Hottenroth nor her attorney asked to withdraw from the one stipulation before the court approved it is not clearly erroneous. (2) Hottenroth's right to withdraw from the stipulations ended when the court approved them, not when the written judgment was entered. (3) The circuit court did not erroneously exercise its discretion in denying Hottenroth's post-judgment motions. (4) The circuit court did not erroneously exercise its discretion in approving the stipulations. (5) The circuit court did not erroneously exercise its discretion in ordering Hottenroth to contribute to Hetsko's attorney fees and pay all the post-judgment guardian ad litem fees because of overtrial on the post-judgment motions. Accordingly, we affirm on all issues.

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

## BACKGROUND

¶ 3. At the time of the divorce trial, which took place in November 2004, Hottenroth and Hetsko had been married approximately sixteen years and had a ten-year-old child. Both Hottenroth and Hetsko had been established in their careers—Hottenroth as a lobbyist and Hetsko as a physician—at the time they married. At the time of the divorce trial, Hottenroth was fifty-two and was an in-house attorney for an energy company. Hetsko was sixty-two and was working as a medical consultant.

¶ 4. At the beginning of the two-day divorce trial, the parties, both represented by counsel, presented a written stipulation regarding child custody and placement. After both parties were questioned by their attorneys on their agreement to the stipulation and the guardian ad litem recommended that the court adopt it, the court found it to be in the best interests of the child and signed it.

¶ 5. After a recess that morning, the parties reached four additional stipulations: a monthly amount for child support, a waiver of maintenance for both parties, a coverture fraction for dividing Hetsko's Dean pension, and a division of the remainder of the estate with 62–1/2 percent to Hetsko and 37–1/2 percent to Hottenroth. We will refer to this last stipulation as the "percentage stipulation." The disputes remaining to be tried concerned what was to be included in the marital estate and the valuation of certain items.

¶ 6. Hottenroth's counsel explained the terms of the four stipulations to the court. In response to the court's questions, Hottenroth affirmed that her attorney had accurately described what she had agreed to, and she stated her understanding of the percentage

207

stipulation. The court received affirmative answers from Hetsko to similar questions. The trial then proceeded. After the close of testimony that day, the court returned to the matter of the four stipulations, found them to be fair and reasonable, accepted them and stated that they would be incorporated into the judgment. More details of what took place at this time will be discussed later in the opinion.

¶ 7. During the second day of trial, the parties entered into more stipulations, which were explained to the court. After the parties were questioned by their attorneys and the court, the court found these stipulations to be fair and reasonable, approved them, and directed that they be incorporated into the judgment. The only issue that remained in dispute was a bill, which the court ruled should be divided equally. On the motion of Hottenroth's attorney for a judgment of divorce based on all the stipulations, the court granted a judgment of divorce and directed that all the stipulations it had approved be incorporated into the written judgment.

¶ 8. Four months after the judgment of divorce was granted, but before entry of the written judgment, Hottenroth, with new counsel, filed a motion for "relief from stipulated divorce judgment" and for a trial. The grounds were that she did not fully understand or agree to the terms of the stipulations, she was under duress because of the effects of domestic abuse inflicted by Hetsko, she was mistaken on certain points of law and on the result of the percentage stipulation, and the property division was unfair. Shortly thereafter, the court entered the written findings of fact, conclusions of law, and judgment of divorce. Hottenroth then moved for reconsideration, alleging the same grounds as in the motion for relief from judgment and, in addition, that the court erred in accepting the percentage stipulation.

¶ 9. After a two-day evidentiary hearing, the circuit court denied Hottenroth's motions. The court determined that neither Hottenroth nor her trial attorney had asked to withdraw from any stipulation prior to court approval, and it concluded that she was not entitled to do so as a matter of right after court approval. The court rejected Hottenroth's contention that it did not fulfill its duty before approving the stipulations, and it determined that Hottenroth had understood them and agreed they were fair; in this latter ruling the court focused on the percentage stipulation because it determined that this was the only stipulation on which there was arguably any question. The court also determined that Hottenroth had not established that she had entered into any stipulation based on mistake, nor had she established that domestic abuse, if any had occurred, had interfered with her ability to understand the proceedings and assert her wishes. Finally, the court concluded that Hottenroth had not established that, as she claimed, the percentage stipulation had actually resulted in an 80/20 split and was thus unfair.

¶ 10. The court ordered Hottenroth to pay for three hours of Hetsko's attorney's time, finding that her attorney had conducted the hearing in a manner that constituted overtrial. The court also ordered Hottenroth to pay all the guardian ad litem's fees for the post-judgment motion because, the court concluded, she had presented no basis in fact or law to reopen the stipulation on custody and placement.

## DISCUSSION

¶ 11. On appeal, Hottenroth contends the circuit court erred by: (1) refusing to allow her to withdraw from the percentage stipulation before court approval; (2) refusing to allow withdrawal from all stipulations, as a matter of right, after court approval but before entry of

209

the written judgment; (3) denying her motions for relief under Wis. Stat. § 806.07 and for reconsideration; (4) failing to conduct a sufficient inquiry before approving the stipulations; and (5) ordering her to contribute to Hetsko's attorney fees and pay all the guardian ad litem fees for the post-judgment motions because of overtrial. We address each of these contentions and conclude the circuit court did not err or erroneously exercise its discretion on any of these points.

I. Withdrawal from Stipulations before Court Approval

■

¶ 12. Parties to a divorce may, "subject to the approval of the court, stipulate for a division of property, for maintenance payments, for the support of children . . . or for legal custody and physical placement, in case a divorce . . . is granted . . . ." Wis. Stat. § 767.10(1). A stipulation under this provision is "merely a recommendation jointly made by [the parties in a divorce action] to the court suggesting what the judgment, if granted, is to provide." *Van Boxtel v. Van Boxtel*, 2001 WI 40, ¶ 13, 242 Wis. 2d 474, 625 N.W.2d 284 (citation omitted).

■

¶ 13. Parties are free to withdraw from a stipulation until "it is incorporated into the divorce judgment." *See id.*, ¶ 26. With respect to this holding in *Van Boxtel*, Hottenroth and Hetsko agree that it means a party is free to withdraw from a stipulation before the court approves it.[2] They disagree on whether Hottenroth attempted to withdraw from the percentage stipulation before court approval.

---

[2] Hottenroth and Hetsko dispute the meaning of *Van Boxtel's* "free to withdraw" language as it applies to the time-

¶ 14. Hottenroth argues that she attempted to withdraw from the percentage stipulation before the court approved it, but the court would not allow her to do so. She challenges the court's post-judgment determination that neither she nor her attorney asked to withdraw from this stipulation before the court approved it. Hottenroth relies on the following interchange that occurred at the end of the first day of the divorce trial to show that she did attempt to withdraw:

> **The Court**: ... for the record, . . . there were some oral agreements that were put on the record earlier, and so that all of the stipulations that are currently ones that have been presented to me are treated in the same fashion, I will approve them as being fair and reasonable.
>
> **Attorney Joanis [Hottenroth's Counsel]**: Your Honor, before we get to that, I can tell you that my client has, during the course of the afternoon indicated a desire that she may wish to withdraw from that stipulation regarding the percentages.
>
> **[Hetsko's Counsel]**: Oh my God.
>
> **The Court**: Well, I think that in light of what I've just done, it's too late for her to do so. And in light of the way in which this case has progressed, I would likewise say that I'm not going to allow her to withdraw from agreements that have been expressed thus far. It would make this into an entirely different trial, as some of the objections and some of the rulings earlier indicated, and it would get us into having to present testimony concerning events that predated the divorce to a much greater extent; and that all of that duplication, the

---

period between court approval and entry of the written judgment. We deal with that dispute in the next section. *See Van Boxtel v. Van Boxtel*, 2001 WI 40, ¶ 26, 242 Wis. 2d 474, 625 N.W.2d 284.

211

impact of that and the prejudice to—frankly, to everybody—including myself and including the respondent, would be enormous, and there's no good reason to do so.

And I will confirm again that those stipulations are accepted and will be made the orders of the Court to be incorporated into the judgment when it is ultimately granted.

¶ 15. According to Hottenroth, Attorney Joanis's statement to the court was an attempt to withdraw from the percentage stipulation before court approval and the court did not allow her to do so. We observe that Attorney Joanis's statement came *after* the court stated that it approved the stipulations—a fact not addressed by Hottenroth. However, we need not decide whether it is significant, as Hottenroth appears to believe, that Attorney Joanis's statement came *immediately* after the court's statement of approval. Instead, we affirm the circuit court's finding that Attorney Joanis's statement was not a request to withdraw from the percentage stipulation.

¶ 16. At the post-judgment hearing, Attorney Joanis and Hottenroth offered conflicting testimony on the circumstances that led Attorney Joanis to make the statement that during the afternoon his client had "indicated a desire that she may wish to withdraw from [the percentage] stipulation . . . ." He testified as follows. Hottenroth never told him she did not agree with a stipulation, before or after agreeing to them, and she never asked him to withdraw from any of the stipulations. He and Hottenroth had a discussion over the course of the first day of trial concerning the percentage stipulation and, as part of a strategy session, they discussed the possibility of withdrawing from that stipulation. Ultimately they decided not to. During

those discussions, he specifically asked Hottenroth whether she wanted to withdraw from that stipulation, and her answer was "no." When he stated to the court that his client had "indicated a desire that she may wish to withdraw from [the percentage] stipulation . . .," he was not attempting to withdraw from the stipulation. He made that comment to let the court know that there had been a discussion about withdrawing because his client was concerned about what would be included in her unequal share of the marital estate, and he wanted the court and opposing counsel to know that.

¶ 17. In contrast, Hottenroth testified that she told her lawyer during the noon and afternoon breaks on the first day of trial that she did want to withdraw from the percentage stipulation because she had not understood that Hetsko's Dean pension would not be subject to that percentage.

¶ 18. Based on the testimony at the post-judgment hearing and the record from the divorce trial, the circuit court found:

> [A]t no time before the end of that trial did [Hottenroth] or her counsel ask to withdraw from any of the stipulations, and the equivocal statement made by Mr. Joanis that his client may wish to withdraw was not a request to withdraw or a motion to withdraw and I find Mr. Joanis's testimony about the circumstances which led to his making that comment at the time of trial to be far more credible than the testimony of [Hottenroth] about what was going on in the afternoon of the first day of trial . . . .

¶ 19. Whether Hottenroth attempted to withdraw from the percentage stipulation is a factual inquiry. We affirm a circuit court's findings of fact unless they are clearly erroneous and defer to the court's credibility determinations. WIS. STAT. § 805.17(2). When more than

213

one reasonable inference can be drawn from the credible evidence, we accept the reasonable inference drawn by the circuit court sitting as fact finder. *Cogswell v. Robertshaw Controls Co.*, 87 Wis. 2d 243, 250, 274 N.W.2d 647 (1979).

¶ 20. The record shows no clear statement by either Hottenroth or her attorney to the circuit court before it approved the percentage stipulation that Hottenroth wanted to withdraw from the percentage stipulation. Attorney Joanis's statement that his client "indicated a desire that she may wish to withdraw from the [percentage] stipulation . . ." was ambiguous on this point; and the testimony of Hottenroth and her attorney on what she told him was sharply conflicting. The circuit court resolved this credibility determination against Hottenroth. Based on Attorney Joanis's testimony and the record of the first day of the divorce trial, the circuit court had a sufficient basis for finding that Hottenroth did not tell him she wanted to withdraw from the percentage stipulation. That finding, in turn, provided a reasonable basis for the court's determination that Attorney Joanis's ambiguous statement to the court was not a request on behalf of Hottenroth to withdraw from the percentage stipulation.

¶ 21. We conclude the circuit court's determination that neither Hottenroth nor her attorney asked to withdraw from the percentage stipulation before court approval is not clearly erroneous.

II. Withdrawal from Stipulations before Written Judgment

¶ 22. Hottenroth contends she had a right to withdraw from all the stipulations after court approval

as long as she did so before entry of the written judgment. In her view, the court erred by entering the written judgment in spite of her first post-judgment motion and also erred in not automatically granting her motion, but instead requiring her to establish grounds for relief under WIS. STAT. § 806.07 or for reconsideration.

¶ 23. Whether Hottenroth has a right to withdraw from a stipulation under WIS. STAT. § 767.10(1) after court approval until the entry of the written judgment requires a determination of the correct legal standard. This presents a question of law, which we review de novo. *See Hokin v. Hokin*, 231 Wis. 2d 184, 191, 605 N.W.2d 219 (Ct. App. 1999).

¶ 24. We have not been able to locate a case, and the parties have not provided one, that directly addresses this issue. The cases on which Hottenroth relies do not address similar factual circumstances and therefore do not have occasion to identify precisely the point in time after which a party to a stipulation under WIS. STAT. § 767.10(1) may not withdraw as a matter of right. In *Van Boxtel*, 242 Wis. 2d 474, ¶¶ 25–26; *Polakowski v. Polakowski*, 2003 WI App 20, ¶ 13, 259 Wis. 2d 765, 657 N.W.2d 102; and *Ayers v. Ayers*, 230 Wis. 2d 431, 442, 602 N.W.2d 132 (Ct. App. 1999), the withdrawal from stipulations occurred before circuit court approval, and the appellate courts therefore held that the circuit courts properly refused to incorporate the stipulations into the divorce judgments. In *Evenson v. Evenson*, 228 Wis. 2d 676, 686–87, 598 N.W.2d 232 (Ct. App. 1999), the circuit court incorporated the parties' stipulation into the divorce judgment even though one party sought to withdraw from it "prior to the court's divorce judgment," and we therefore reversed. In *Norman v. Norman*, 117 Wis. 2d 80, 81–82, 342 N.W.2d 780 (Ct.

215

App. 1983), after the family court commissioner had approved the stipulation, one party subsequently moved to set it aside, but the circuit court refused to do so; we reversed, concluding that the party was "free to withdraw from [the stipulation] until it was incorporated in the judgment." In neither *Evenson* nor *Norman* was it necessary to define what we meant by the "divorce judgment' or "incorporating it into the divorce judgment."

■■■■■

¶ 25. In the absence of case law directly on point, we turn to consideration of the reasoning underlying the principle that a party has a right—up until a time we have yet to define—to withdraw from a stipulation under WIS. STAT. § 767.10(1). The reasoning is that, while stipulations between parties in divorce actions are to be encouraged, a divorce is not a business matter between two people but, rather, a matter in which the state has an interest. *Miner v. Miner*, 10 Wis. 2d 438, 442, 103 N.W.2d 4 (1960). A stipulation under § 767.10(1) is not a contract, which would be binding on the parties once entered into, but, as already noted, only a recommendation to the court. *Van Boxtel*, 242 Wis. 2d 474, ¶ 13. Because it is only a recommendation, the court need not accept it, but instead has a duty to decide whether that recommendation is a fair and reasonable resolution of the issues and, thus, a recommendation the court wants to adopt. *Miner*, 10 Wis. 2d at 443. When a court adopts a stipulation, it "does so on its own responsibility, and the provisions become its own judgment." *Id.* The decision whether to approve or reject a stipulation is within the circuit court's discretion. *See Van Boxtel*, 242 Wis. 2d 474, ¶ 25 (describing the circuit court's refusal to approve a stipulation and incorporate it into the judgment as a "discretionary determination").

¶ 26. It is consistent with the circuit court's authority to decide whether to adopt a stipulation that, once the court decides to do so, the right of a party to withdraw from the stipulation comes to an end. Whether the circuit court's decision is expressed as "approval" of the stipulation or "adoption" of the stipulation or as a ruling that "it be incorporated into the judgment" is not significant. The significant point is that once the court has expressed its decision to adopt the stipulation, the stipulation is no longer a recommendation of the parties but is the court's decision, a decision that has the same effect as one made on contested issues. In the latter situation, a party does not have the right to unilaterally alter the court's decision, and we see no reason a party should have that right in the former situation. Of course, in both cases a party may ask a circuit court to reconsider the decision before it becomes final, and the court has the discretion to do so. *See Fritsche v. Ford Motor Credit Co.*, 171 Wis. 2d 280, 294–95, 491 N.W.2d 119 (Ct. App. 1992) (at common law court's have authority to reconsider non-final rulings on a party's motion). However, the court is not obligated to do so absent some reason that, in the proper exercise of its discretion, justifies a change in its decision.

¶ 27. Hottenroth's position—that a party should have until the entry of the written judgment of divorce to withdraw as a matter of right from a stipulation under Wis. Stat. § 767.10(1)—is not in keeping either with the significance of the judicial act in adopting a stipulation or with fair and efficient divorce proceedings. When, as was the case here, the court approves a stipulation that resolves some issues and the trial proceeds on other issues, it is possible that either party

217

may have second thoughts on the wisdom of the stipulation, based on evidence that comes in or the court's rulings. It is likely that later withdrawal from the stipulation would require recalling witnesses, repeating testimony, or result in other inefficiencies in completing a trial on the previously stipulated issues. There may be sound reasons for this in particular cases, but that should be up to the circuit court, in the proper exercise of its discretion, not the unilateral decision of one party.

¶ 28. We also do not agree that the entry of the written judgment of divorce is a rational endpoint for a party's right to withdraw from a stipulation already approved by the circuit court. When a judgment of divorce is granted, it is effective immediately, WIS. STAT. § 767.37(3); a judgment is "granted" when it is given orally in open court on the record. WIS. STAT. § 806.06(1)(d). However, it is often the case in divorce proceedings that the written findings of fact, conclusions of law, and judgment are entered (that is, filed with the clerk of court, *see* § 806.06(1)(b)) at a later time. Section 767.37(1)(a) provides that the moving party is to draft the written findings of fact, conclusions of law, and judgment and submit it to the circuit court within thirty days from the date the judgment is granted; the draft must be submitted to the other party, if represented, for approval. As in this case, the time from the close of trial and the oral granting of a judgment of divorce to the entry of the written judgment can be considerably longer than thirty days. That delay is often not within the control of the circuit court; the non-drafting party may have objections to the draft that result in further communications between the parties before the court is finally presented with a draft approved by both parties.

¶ 29. A rule that parties may withdraw as a matter of right from court-approved stipulations until the entry of the written judgment creates incentives for parties to delay in the process of preparing or approving the draft. It also increases uncertainty and undermines the interest of finality. In circumstances where the interests of certainty and finality should properly give way to other considerations, parties have procedures available for requesting relief from the court. *See, e.g.,* Wis. Stat. § 806.07 (relief from judgment or order); Wis. Stat. § 805.17(3) (motion for reconsideration within twenty days of entry of judgment after trial to court).

¶ 30. We conclude that, once a court approves a stipulation under Wis. Stat. § 767.10(1), the right of the parties to withdraw from the stipulation comes to an end. In the case before us, the circuit court approved during the divorce trial each of the oral and written stipulations the parties presented; the court found each stipulation to be fair and reasonable and directed that each be incorporated into the written judgment. Therefore, when Hottenroth filed her motion for relief from the stipulations four months later, she no longer had the right to withdraw from them. Accordingly, the circuit court did not err in deciding that she was not entitled to have the stipulations set aside without establishing grounds under Wis. Stat. § 806.07 or for reconsideration.

III. Motions under Wis. Stat. § 806.07 and for Reconsideration

¶ 31. Hottenroth argues that the court erroneously exercised its discretion in denying her motion for relief from judgment under Wis. Stat. § 806.07[3] and her motion for reconsideration. She asserts that she established grounds for relief by showing that she did not

---

[3] Wisconsin Stat. § 806.07 provides:

enter into the stipulations freely and voluntarily due to the emotional effects of domestic abuse and due to mistakes and misunderstandings in negotiating the stipulations. Hottenroth did not specify in her motion the subsections of § 806.07 under which she sought relief and she does not do so in her appellate briefs. However, we understand, as did the circuit court, that she is arguing mistake under subsec. (1)(a), and other reasons justifying relief under subsec. (1)(h). Hottenroth does not distinguish between these grounds and the grounds she asserts for reconsideration. We therefore make no distinction in our discussion.

¶ 32. A party may seek relief under WIS. STAT. § 806.07 from a divorce judgment even if the party stipulated to the particular provision the party now

---

**Relief from judgment or order. (1)** On motion and upon such terms as are just, the court . . . may relieve a party or legal representative from a judgment, order or stipulation for the following reasons:

(a) Mistake, inadvertence, surprise, or excusable neglect;

(b) Newly—discovered evidence which entitles a party to a new trial under s. 805.15 (3);

(c) Fraud, misrepresentation, or other misconduct of an adverse party;

(d) The judgment is void;

(e) The judgment has been satisfied, released or discharged;

(f) A prior judgment upon which the judgment is based has been reversed or otherwise vacated;

(g) It is no longer equitable that the judgment should have prospective application; or

(h) Any other reasons justifying relief from the operation of the judgment.

seeks to have set aside. *Winkler v. Winkler*, 2005 WI App 100, ¶ 17, 282 Wis. 2d 746, 699 N.W.2d 652. In order to establish grounds for relief under § 806.07(1)(h), a party must demonstrate "extraordinary circumstances" that justify relief. *State ex rel. M.L.B. v. D.G.H.*, 122 Wis. 2d 536, 549, 363 N.W.2d 419 (1985).

¶ 33. We do not reverse a circuit court's order denying a motion for relief under WIS. STAT. § 806.07 unless the court erroneously exercised its discretion. *See M.L.B.*, 122 Wis. 2d at 541. Our standard of review is the same for an order denying a motion for reconsideration. *See Koepsell's Olde Popcorn Wagons, Inc. v. Koepsell's Festival Popcorn Wagons, Ltd.*, 2004 WI App 129, ¶ 6, 275 Wis. 2d 397, 685 N.W.2d 853. We do not find an erroneous exercise of discretion if the record shows that the circuit court exercised its discretion and that there is a reasonable basis for the court's determination. *Howard v. Duersten*, 81 Wis. 2d 301, 305, 260 N.W.2d 274 (1977). The term "discretion" contemplates a process of reasoning that depends on facts that are in the record or are reasonably derived by inference from the record and yields a conclusion based on logic and founded on proper legal standards. *Shuput v. Lauer*, 109 Wis. 2d 164, 177–78, 325 N.W.2d 321 (1982).

¶ 34. We conclude the circuit court did not erroneously exercise its discretion in denying Hottenroth's motions for relief under WIS. STAT. § 806.07 and for reconsideration. The circuit court found that, at the time Hottenroth entered into the stipulations, she did so knowingly and with understanding. The circuit court based this finding on Hottenroth's answers to questions asked by Attorney Joanis and by the court during the trial and on Attorney Joanis's testimony, which the circuit court credited, that Hottenroth was a careful,

attentive, legally trained client who took it upon herself to read family law. The court considered Hottenroth's assertion and testimony that there were mistakes and misunderstandings in negotiating the stipulations. It analyzed the substantive nature of the stipulations, the testimony of Hetsko, Hottenroth, and Attorney Joanis, and explained why it concluded there was no evidence of mistake or misunderstanding.

¶ 35. The circuit court also evaluated the evidence on domestic abuse. It discussed in detail the testimony of Hottenroth's domestic abuse expert and explained why his opinions regarding Hottenroth lacked adequate support. The court explained the evidence of Attorney Joanis that persuaded it that, if there was any abuse, it did not affect Hottenroth's abilities to enter into the stipulations. The court concluded that the "allegation of domestic violence [did not] create[] any extraordinary circumstances that justify relief."

¶ 36. Hottenroth argues that the circumstances here are the same as those in *Conrad v. Conrad*, 92 Wis. 2d 407, 284 N.W.2d 674 (1979), in which the supreme court concluded that the circuit court erroneously exercised its discretion in denying a Wis. Stat. § 806.07 motion for relief from a judgment based on a stipulation. We do not agree that the facts are similar. In *Conrad*, the appellant had not agreed to the stipulation on the record; the circuit court made no inquiries of the parties' understanding and agreement before adopting the stipulation; the appellant had made her objections known; the written stipulation differed from the one presented orally in court; and the stipulation was based on outdated financial records. *Id.* at 414–18. Nonetheless, the circuit court denied the motion for relief without a hearing and without providing an explanation. *Id.* at 414.

¶ 37. In contrast, in this case the circuit court did inquire into the parties' understanding of and agreement to each stipulation before it approved each, and Hottenroth did not object to the stipulations until four months later. The circuit court then held a two-day evidentiary hearing on her motions for relief from judgment and reconsideration and provided a thorough oral decision explaining its denial of the motions. In its decision, the court addressed each of Hottenroth's contentions and, in a logical manner with detailed references to the record and application of the correct law, explained why it rejected each contention. The court's conclusion that Hottenroth did not establish grounds for relief under WIS. STAT. § 806.07 or for reconsideration is supported by the record and is a proper exercise of discretion.

IV. The Circuit Court's Approval of the Stipulations

¶ 38. Hottenroth argues that the trial court erred in failing to "independently examine" the stipulated agreements before approving them. As we understand her position, even if she does not establish grounds under WIS. STAT. § 806.07 to set aside the judgment based on the stipulations or establish grounds for reconsideration of the court's approval of those stipulations, she has an independent ground for appeal based on her contention that the circuit court did not conduct a sufficient inquiry before approving the stipulations. We reject this contention for the followings reasons.

¶ 39. First, Hottenroth's position is based on the mistaken premise that, before approving a stipulation, the circuit court must take evidence and make an investigation in essentially the same manner as if the stipulated matters were contested. We do not agree with her reading of the case law.

¶ 40. In *Miner*, the case on which Hottenroth principally relies, the circuit court erroneously believed it did not have the authority to modify a maintenance provision in a judgment because the provision was based on a stipulation. *See Miner*, 10 Wis. 2d at 443–44. In explaining the principle that a divorce stipulation is not a contract, the supreme court described the circuit court's role in deciding whether to approve a stipulation as follows:

> The court has the same serious duty to examine carefully such agreements or stipulations against the background of full information of the economic status and resources of the parties as it has in making a determination without the aid of such an agreement. The parties should be examined to determine if they understand the provisions and the effect of the agreement that it was fairly and voluntarily entered into . . . .

*Id.* at 443. Contrary to Hottenroth's assertion, *Miner* does not establish a specific procedure for circuit courts to use in approving a stipulation. The context and focus of the court's discussion was to correct the erroneous view that a court must approve the parties' stipulation and cannot modify it.

¶ 41. *Ray v. Ray*, 57 Wis. 2d 77, 81, 84, 203 N.W.2d 724 (1973), like *Miner*, was a case in which the circuit court erroneously viewed a divorce stipulation as a contract. The *Ray* court quoted the above language from *Miner* and remanded for "an independent determination by the trial court concerning the adequacy of the agreement under law"; but it did not further define the circuit court's obligations. *Id.* at 83–84.

¶ 42. *Van Boxtel*, 242 Wis. 2d 474, ¶ 26, as already noted, affirmed a circuit court's order refusing to incorporate a stipulation into a judgment because one

224

party repudiated it. *Van Boxtel* adds nothing to *Miner* and *Ray* regarding a circuit court's obligations before approving a stipulation.[4]

¶ 43. Hottenroth also relies on *LeMere v. LeMere*, 2003 WI 67, 262 Wis. 2d 426, 663 N.W.2d 789, *Steinke v. Steinke*, 126 Wis. 2d 372, 376 N.W.2d 839 (1985), and *Hokin v. Hokin*, 231 Wis. 2d 184, in arguing that the circuit court is required to articulate its reasons for accepting a stipulation that deviates from a 50/50 property division. However, in these cases property division was contested. The case law does not support imposing the same requirements on the circuit court approving a stipulation.

¶ 44. In this case, it is unnecessary to define the minimum requirements that must be met before a court approves a stipulation. Whatever the standard, it is easily met here. The record shows that the circuit court judge was familiar with the circumstances of the parties, economic and otherwise. The court held a settlement conference with the parties and their attorneys in advance of trial in which it discussed and reviewed the evidence and indicated to the parties how it would likely rule in light of the information it had. The court heard each stipulation explained; it questioned, or heard the attorneys' question, the parties on their understanding

---

[4] Hottenroth also relies on *Bliwas v. Bliwas*, 47 Wis. 2d 635, 637–38, 178 N.W.2d 35 (1970), but that case addressed a different issue entirely: whether the circuit court could enforce an order based on a stipulation that the court did not have the authority to order in the absence of a stipulation. The supreme court concluded that the circuit court could enforce such an order by contempt because a party who agrees that a provision should be included in a family court order, especially when he or she receives a benefit for doing so, should not be permitted to object to the court enforcing the order. *Id.* at 640–41.

and agreement; and it made its own determination that the stipulations were fair and reasonable.

¶ 45. There is a second, more important reason why we disagree with Hottenroth's position. Even if the court's inquiry before approving the stipulation were inadequate, Hottenroth's recourse is not an appeal on that ground. Rather, when a party to a divorce feels that the court should not have approved a stipulation—either because of facts that the court was not aware of at the time or facts that the court did not properly evaluate—a party must bring this to the court's attention, either through a motion for reconsideration, a motion under WIS. STAT. § 806.07, or other appropriate procedure. Hottenroth did this. In the post-judgment evidentiary hearing, she had an opportunity to present to the circuit court all the evidence and argument that, in her view, made acceptance of the stipulations an error. Thus, any insufficiency in the information the court had before approving the stipulation was cured. We have already concluded that the circuit court properly denied those motions. The circuit court's post-judgment rulings, now affirmed on appeal, fully resolve Hottenroth's claim that the court erroneously exercised its discretion in approving the stipulations,[5] and she is entitled to no relief on that ground.

[5] There is one exception. On appeal Hottenroth makes a challenge to the child support stipulation that she did not raise in the post-judgment motions. She contends that stipulation is against public policy because it provides that she will not seek a modification of it until the child is eighteen. Because Hottenroth did not raise this issue in her post-judgment motions in the circuit court, we decline to consider it on this appeal. *See Maciolek v. City of Milwaukee Employes' Retire. Sys. Annuity & Pension Bd.*, 2005 WI App 74, ¶ 22, 280 Wis. 2d 585, 695 N.W.2d

## V. Attorney Fees and Guardian ad Litem Fees for Overtrial

¶ 46. Hottenroth contends the circuit court erroneously exercised its discretion in ordering her to pay for three hours of Hetsko's attorney's time and all the guardian ad litem fees on the post-judgment motions.

¶ 47. In making the ruling on attorney fees, the circuit court explained that Hottenroth's attorney had wasted time at the post-judgment hearing by going into matters that might have been relevant at the divorce trial but were not relevant to a motion for relief on a ground under WIS. STAT. § 806.07 or a motion for reconsideration. The court referred to the number of objections it had sustained on relevancy grounds and the number of times the court had to interject "to keep the hearing on track." The manner in which Hottenroth's attorney had questioned witnesses, the court stated, was not efficient, unnecessarily prolonged the hearing, and constituted overtrial.

¶ 48. Hottenroth asserts that most of the time at the hearing was spent in questioning her domestic abuse expert and this testimony was necessary to her case because domestic abuse is an emerging science and not well understood. According to Hottenroth, the court had no reasonable basis for concluding that her attorney engaged in overtrial.

¶ 49. The overtrial doctrine may be invoked in family law cases when one party's unreasonable approach to litigation causes the other party to incur extra and unnecessary fees. *Ondrasek v. Ondrasek*, 126

875. However, nothing in this opinion precludes Hottenroth from raising this issue in the context of a motion to modify child support.

Wis. 2d 469, 484, 377 N.W.2d 190 (Ct. App. 1985). Whether excessive litigation occurred is a question committed to the discretion of the circuit court. *Zhang v. Yu*, 2001 WI App 267, ¶ 11, 248 Wis. 2d 913, 637 N.W.2d 754.

¶ 50. We conclude the circuit court did not erroneously exercise its discretion in deciding that the manner in which Hottenroth's attorney questioned witnesses constituted overtrial. Our review of the record shows that there were numerous instances in which her attorney asked irrelevant questions, and, even after objections were sustained and the court made clear its view that her attorney was wasting time, irrelevant questioning continued. This occurred not only with respect to Hottenroth's domestic violence expert but also with Hottenroth and other witnesses. The record thus supports the circuit court's determination that the content and manner of Hottenroth's attorney's questions unnecessarily prolonged the hearing. Further, the assessment of three hours of attorney fees for the overtrial is reasonable. The hearing extended over two long days and the record shows that three hours is an appropriate estimate of the amount of time taken up in unnecessary and unreasonable questioning by Hottenroth's attorney.

¶ 51. With respect to the guardian ad litem fees, Hottenroth contends the circuit court erroneously exercised its discretion in ordering her to pay all the post-judgment fees without first making a determination of the parties' ability to pay and then ordering payment on that basis. She relies on *Lacey v. Lacey*, 45 Wis. 2d 378, 389, 173 N.W.2d 142 (1970), and *Tesch v. Tesch*, 63 Wis. 2d 320, 338–39, 217 N.W.2d 647 (1974), in which the supreme court held that where both

parties have the ability to pay, both should contribute to the guardian ad litem fees.[6] Hottenroth asserts that the reason the court gave here—that she presented no basis in fact or law for reopening the stipulation concerning custody and placement—is not a permissible basis for ordering her to pay all the guardian ad litem fees, pointing out that *Ondrasek,* and subsequent cases relying on *Ondrasek* to impose attorney fees for overtrial, do not involve guardian ad litem fees.

¶ 52. Hottenroth is correct that no reported case relies on overtrial in awarding guardian ad litem fees. On the other hand, *Lacey* and *Tesch* do not preclude a court from considering overtrial in awarding guardian ad litem fees; they simply do not address the topic. We conclude that the reasoning of *Ondrasek* applies to guardian ad litem fees as well as attorney fees.

¶ 53. In *Ondrasek,* the court considered and rejected an argument ,similar to the one Hottenroth makes here. WISCONSIN STAT. § 767.262(1) authorizes the court, after considering the financial resources of both parties, to "[o]rder either party to pay a reasonable amount for the cost to the other party . . . and for attorney fees . . . ." In *Ondrasek,* the court rejected the argument that § 767.262(1) precluded the court from awarding attorney fees for overtrial without first making a determination of need and ability to pay. *See Ondrasek,* 126 Wis. 2d at 484. The *Ondrasek* court decided that "[a]s a matter of sound policy, an innocent party who is the victim of 'overtrial' should not be

[6] WISCONSIN STAT. § 767.045(6), enacted after *Lacey v. Lacey,* 45 Wis. 2d 378, 173 N.W.2d 142 (1970), and *Tesch v. Tesch,* 63 Wis. 2d 320, 217 N.W.2d 647 (1974), were decided, provides that " . . . [t]he court shall order either or both parties to pay all or any part of the compensation of the guardian ad litem . . . ."

burdened with the payment of extra and unnecessary attorney fees occasioned by the other party." *Id.*

¶ 54. We conclude this public policy is equally applicable with respect to guardian ad litem fees. A party who is the victim of overtrial that required the services of a guardian ad litem should not be burdened with the payment of "extra and unnecessary" guardian ad litem fees "that were occasioned by the other party." *See id.*

¶ 55. In this case, the court determined that Hottenroth's motion to set aside the stipulation on placement and custody, which necessitated the services of the guardian ad litem, was without a reasonable basis in fact or law. Hottenroth implicitly concedes this is, in essence, a determination of overtrial. She does not develop an argument that she is unable to pay the guardian ad litem fees; indeed, she does not even tell us the amount of the fees.[7] We therefore conclude she has not established that the circuit court erroneously exercised its discretion in ordering her to pay all the guardian ad litem's post-judgment fees because of overtrial.

---

[7] When a court awards fees because of overtrial, it must still determine the reasonableness of the fees. *Johnson v. Johnson,* 199 Wis. 2d 367, 378, 545 N.W.2d 239 (Ct. App. 1996). Hottenroth expressly states she is not contesting the reasonableness of the fees.

In noting that Hottenroth does not develop an argument that she is unable to pay the guardian ad litem fees, we are not implicitly ruling that, in awarding attorney or guardian ad litem fees for overtrial, a circuit court must take into account the payor's financial circumstances. It is unnecessary to decide whether the proper exercise of discretion in an overtrial award requires this or whether *Ondrasek v. Ondrasek,* 126 Wis. 2d 469, 483–84, 377 N.W.2d 190 (Ct. App. 1985), precludes this.

## CONCLUSION

¶ 56. We conclude: (1) the circuit court's factual determination that neither Hottenroth nor her attorney asked to withdraw from the percentage stipulation before court approval is not clearly erroneous; (2) Hottenroth's right to withdraw from the stipulations ended when the court approved them, not when the written judgment was entered; (3) the circuit court did not erroneously exercise its discretion in denying Hottenroth's post-judgment motions; (4) the circuit court did not erroneously exercise its discretion in approving the stipulations; and (5) the circuit court did not erroneously exercise its discretion in ordering Hottenroth to contribute to Hetsko's attorney fees and pay all the guardian ad litem fees because of overtrial on the post-judgment motions. We therefore affirm.

*By the Court.*—Judgment and order affirmed.