PER CURIAM.
¶1 Roberta Dale-Wozniak appeals an order denying her motion for relief from a judgment terminating her marriage to Bruce Wozniak. She also appeals an order denying her motion for reconsideration. Roberta argues the circuit court erroneously exercised its discretion by denying both of her motions. We reject her arguments and affirm.
BACKGROUND
¶2 Roberta and Bruce were married in October 1998. It was Roberta's first marriage, and Bruce's second. No children were born of the marriage. Roberta petitioned for legal separation in November 2015, and Bruce later counter-petitioned for divorce.
¶3 A final divorce hearing took place on October 28, 2016. At the time of the hearing, Roberta was forty-four years old, and Bruce was sixty. Roberta had a law degree but was not practicing law; she was instead employed part time at a church. Bruce was employed as a state trooper.
¶4 Bruce also began receiving a military pension in October 2016. It is undisputed that Bruce left active duty military service in 1992, as part of the Voluntary Separation Incentive (VSI) Program. Under the VSI Program, Bruce was entitled to receive annual payments of $ 15,000 until 2020. However, in 2005-during the parties' marriage-Bruce was recruited to re-enlist in the Army National Guard due to an increased need for personnel. Bruce testified that, as a result of his decision to reenlist, he was required to repay all of the VSI payments he received via a forty percent reduction in his military pension payments.
¶5 During the final divorce hearing, the parties presented the circuit court with a signed marital settlement agreement (MSA) addressing maintenance and property division. The MSA provided that Bruce would make an equalization payment of $ 57,000 to Roberta. It further provided that Roberta would receive $ 300 per month from Bruce's military pension and would receive half of the marital portion of Bruce's state retirement benefits. In addition, Bruce agreed to provide Roberta with a survivor benefit that would, in the event of his death, grant her a portion of his military pension for the remainder of her lifetime. Both parties agreed to waive maintenance.
¶6 In his financial disclosure statement, which was submitted on the day of the final hearing, Bruce represented that he "anticipated" receiving monthly military pension payments of $ 1469.40 "after VSI reduction." (Italics omitted.) He acknowledged during the hearing that his first pension check-the only one he had received as of that date-did not include a VSI deduction. However, he characterized that omission as an "error." Roberta did not raise any concerns about the MSA during the final hearing, even after learning that Bruce's first pension payment did not include a VSI deduction. The circuit court accepted the MSA, concluding it was fair and equitable, and incorporated it into the parties' divorce judgment.
¶7 On October 26, 2017-just under one year after the final hearing-Roberta moved for relief from the divorce judgment under WIS. STAT. § 806.07 (2017-18).[1] She alleged she had discovered three things after the final hearing that warranted reopening the divorce judgment. First, Roberta asserted that no VSI deductions were taken from Bruce's monthly pension payments until July 2017, meaning that Bruce received his full pension for eight months after the final hearing. Second, Roberta alleged she had discovered that Bruce's VSI debt would be paid off in approximately sixty-three months, and the VSI deductions from his pension income were therefore temporary rather than permanent. Third, Roberta contended Bruce's "net pay" from his military pension was actually $ 1655.66 per month instead of $ 1469.40-the amount of "anticipated" pension income he had listed on his financial disclosure statement.
¶8 Roberta argued this new information showed that Bruce's pension income was much greater than she believed it would be at the time of the final hearing. She further argued that, had she been aware of this information at the time of the hearing, she would not have agreed to accept only $ 300 per month from Bruce's pension. She therefore asked the circuit court for relief from the divorce judgment based on mistake, inadvertence, or excusable neglect, see WIS. STAT. § 806.07(1)(a) ; fraud, misrepresentation, or other misconduct, see § 806.07(1)(c) ; because it was no longer equitable for the divorce judgment to have prospective application, see § 806.07(1)(g) ; and because extraordinary circumstances justified relief in the interest of justice, see § 806.07(1)(h). Specifically, she asked the court to either increase the amount she received from Bruce's military pension or to reopen the issue of maintenance.
¶9 The circuit court denied Roberta's motion for relief from the divorce judgment, following a hearing at which both Roberta and Bruce testified. The court explained:
The Court finds that both parties were in command of the same information regarding [Bruce's] military retirement pay at the time of the final divorce hearing. Further, the record is clear that [Roberta] had researched the topic and made a free, voluntary and knowing waiver of any claim to maintenance. Finally, the Court finds that the actual net benefit received by [Bruce] is not materially different than the benefit that was estimated at the time of the [final divorce] hearing and that he did not misrepresent the facts. Therefore, the agreement was not the result of misrepresentation, fraud, or omission. Likewise, there were no mistakes of fact made on October 28, 2016. Both parties had the same information available to them and relied on the same information in making the decision to waive maintenance.
¶10 Roberta moved for reconsideration, arguing the circuit court made manifest errors of fact when it found that: (1) there was no mistake of fact regarding the amount of Bruce's pension payments; and (2) the net benefit Bruce received was not materially different from what the parties anticipated at the time of the final hearing. The court denied Roberta's motion, stating she had "not submitted newly discovered evidence or established a manifest error of law or fact." The court further stated it "[stood] by the reasoning expressed in" its order denying relief from the divorce judgment. Roberta now appeals, challenging both the court's order denying her motion for relief from the divorce judgment and its order denying reconsideration.
DISCUSSION
I. Motion for relief from judgment
¶11 We will not reverse a circuit court's order denying a motion for relief from judgment under WIS. STAT. § 806.07 unless the court erroneously exercised its discretion. Hottenroth v. Hetsko , 2006 WI App 249, ¶33, 298 Wis. 2d 200, 727 N.W.2d 38. A court properly exercises its discretion when it examines the relevant facts, applies the correct standard of law, and uses a rational process to reach a reasonable conclusion. Randall v. Randall , 2000 WI App 98, ¶7, 235 Wis. 2d 1, 612 N.W.2d 737. "Although the proper exercise of discretion contemplates that the circuit court explain its reasoning, when the court does not do so, we may search the record to determine if it supports the court's discretionary decision." Id. In addition, we will not disturb any factual findings underlying a circuit court's discretionary decision unless they are clearly erroneous. See Covelli v. Covelli , 2006 WI App 121, ¶13, 293 Wis. 2d 707, 718 N.W.2d 260.
¶12 On appeal, Roberta argues the circuit court erroneously exercised its discretion by failing to grant her relief from the parties' divorce judgment under WIS. STAT. § 806.07(1)(a), (b), (c), (g) or (h). We address and reject each of Roberta's arguments in turn.
A. WISCONSIN STAT. § 806.07(1)(a)
¶13 Roberta first argues the circuit court erred by failing to grant her relief under WIS. STAT. § 806.07(1)(a), which permits a court to grant relief from a judgment based on "[m]istake, inadvertence, surprise, or excusable neglect." Roberta contends the parties were mistaken as to three facts at the time of the final divorce hearing. First, she asserts they did not understand that the VSI deductions from Bruce's monthly pension payments would not begin until July 2017. Second, she contends they believed the VSI deductions would be permanent, rather than temporary. Third, she argues they were mistaken as to the amount of Bruce's monthly pension income.
¶14 We agree with the circuit court that Roberta failed to establish the existence of a mistake that would justify granting her relief from the divorce judgment. With respect to Roberta's first argument regarding the delay in the VSI deductions, Bruce testified during the final divorce hearing that, although he had retired in June 2016, he did not receive his first pension payment until October 2016-four months later. Bruce further testified that his first pension check contained an "error," in that it did not include any VSI deduction. Roberta was therefore on notice, at the time of the hearing, that Bruce's pension payments had been subject to delay and that his first payment did not include a VSI deduction. Under these circumstances, further delay in the application of the VSI deductions was certainly foreseeable. Roberta was free to withdraw from the MSA during the final hearing and seek additional information about the timing of the VSI deductions, but she chose not to do so. On these facts, we agree with Bruce that "[w]hile a delay in the VSI deduction was not what the parties originally anticipated, it was not a mistake of fact because it was known"-or reasonably foreseeable-"at the final hearing."
¶15 Roberta has also failed to establish a mistake of fact as to whether the VSI deductions were permanent or temporary. In support of her claim that the deductions would end after sixty-three months, Roberta relied on Bruce's "retiree account statement" from December 9, 2017, which listed a "debt balance" of $ 89,774.39. However, Roberta did not present any witnesses who were qualified to explain what the "debt balance" on that statement meant or how it related to the VSI Program. On this record, the circuit court could reasonably conclude that Roberta had failed to establish a mistake of fact because she had not shown that the VSI deductions were actually temporary, rather than permanent. Alternatively, the court could have reasoned that both parties were operating under the same belief regarding the permanency of the VSI deductions at the time of the final hearing, and that by proceeding with the MSA rather than seeking additional information, they accepted the risk that the deductions might, in fact, be temporary.
¶16 As for Roberta's contention that the parties were mistaken as to the amount of Bruce's monthly pension payments, the circuit court reasonably concluded that "the actual net benefit received by [Bruce was] not materially different than the benefit that was estimated at the time of the [final divorce] hearing." As noted above, both parties believed at the time of the hearing that Bruce's monthly pension income-minus the VSI deduction-would be $ 1469.40. Bruce's December 9, 2017 retiree account statement-the most recent statement in the record-lists his monthly "net pay" as $ 1655.66. Thus, the difference between Bruce's anticipated net pension benefit and his actual benefit received more than a year later was only $ 186.26 per month.[2] Roberta cites no evidence undercutting the circuit court's finding that this difference was not "material," for purposes of the parties' decision to enter into the MSA. As such, the court could reasonably conclude that any "mistake" regarding the amount of Bruce's monthly pension income did not justify granting Roberta relief from the divorce judgment.
B. WISCONSIN STAT. § 806.07(1)(b)
¶17 Roberta next argues the circuit court should have granted her relief from the divorce judgment under WIS. STAT. § 806.07(1)(b), based on newly discovered evidence. Specifically, she contends information she discovered after the final divorce hearing shows that the VSI deductions are temporary, rather than permanent, and that Bruce is receiving "concurrent retirement disability pay" from the Department of Veterans Affairs (VA).
¶18 Roberta forfeited these arguments by failing to raise them in the circuit court. See Tatera v. FMC Corp. , 2010 WI 90, ¶19 n.16, 328 Wis. 2d 320, 786 N.W.2d 810. First, Roberta never asked the circuit court to grant her relief from the divorce judgment under WIS. STAT. § 806.07(1)(b). Second, she never argued that any new information about the duration of the VSI deductions qualified as newly discovered evidence, as that term is used in the statute. Third, she did not raise any argument whatsoever about Bruce's disability pay. We need not address arguments raised for the first time on appeal. See State v. Reese , 2014 WI App 27, ¶14 n.2, 353 Wis. 2d 266, 844 N.W.2d 396.
¶19 Roberta concedes that she did not raise any argument in the circuit court regarding WIS. STAT. § 806.07(1)(b), but she contends the court should have sua sponte granted her relief from the divorce judgment under that paragraph. Our supreme court has held that circuit courts "have the power to act sua sponte under the provisions of WIS. STAT. § 806.07." Larry v. Harris , 2008 WI 81, ¶25, 311 Wis. 2d 326, 752 N.W.2d 279 (italics omitted). However, Roberta does not cite any authority supporting the proposition that a court erroneously exercises its discretion by failing to grant relief from a judgment sua sponte under § 806.07, on a basis not raised by any party. We therefore reject Roberta's argument that the circuit court erroneously exercised its discretion by failing to do so here.
¶20 In addition, Roberta's argument regarding Bruce's disability pay is undeveloped. She fails to show how any disability pay that Bruce may have received affected his monthly income. We need not address undeveloped arguments. See State v. Pettit , 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).
C. WISCONSIN STAT. § 806.07(1)(c)
¶21 Roberta next argues the circuit court erred by failing to grant her relief from the divorce judgment under WIS. STAT. § 806.07(1)(c), based on "[f]raud, misrepresentation, or other misconduct of an adverse party." She claims Bruce intentionally misrepresented on his financial disclosure statement that his pension income, after the VSI deduction, would be $ 1469.40 per month.
¶22 Roberta's argument in this regard is inconsistent with her position in the circuit court. In her motion for relief from the divorce judgment, Roberta initially argued that the discrepancy between Bruce's anticipated pension income and his actual pension income was the result of either a mistake or an intentional misrepresentation. However, following the hearing on Roberta's motion, her attorney conceded there was no evidence that Bruce "knowingly filed a false Financial Disclosure Statement." Counsel argued the evidence instead showed that Bruce had been mistaken about the amount of his pension payments. Given that concession, Roberta cannot now argue the circuit court erred by failing to find that Bruce intentionally misrepresented his pension income.
¶23 Roberta also alleges that Bruce committed an intentional misrepresentation by failing to disclose that his first pension check did not include a VSI deduction. However, as noted above, Bruce expressly testified during the final divorce hearing that his first pension check-the only one he had received as of that date-did not include a VSI deduction. Roberta's assertion that Bruce failed to disclose that fact is therefore meritless.
¶24 Finally, Roberta contends there are "material questions about [Bruce's] VA disability and payments from it that were also not disclosed at the time of the [final divorce] hearing." Again, though, Roberta forfeited this argument by failing to raise it in the circuit court, and she has failed to present a developed argument regarding Bruce's disability pay on appeal. As such, we need not address Roberta's claim that any alleged misrepresentation about Bruce's disability pay justifies granting her relief from the divorce judgment under WIS. STAT. § 806.07(1)(c).
D. WISCONSIN STAT. § 806.07(1)(g)
¶25 Next, Roberta contends the circuit court should have granted her relief from the divorce judgment under WIS. STAT. § 806.07(1)(g), which permits a court to grant relief where "[i]t is no longer equitable that the judgment should have prospective application." Roberta contends the divorce judgment "has become inequitable based on all of the circumstances" discussed above.
¶26 This argument fails because Roberta has not explained why she believes WIS. STAT. § 806.07(1)(g) is applicable here. In State ex rel. M.L.B. v. D.G.H. , 122 Wis. 2d 536, 543-44, 363 N.W.2d 419 (1985), our supreme court concluded D.G.H. could not obtain relief from a paternity judgment and child support order under para. (1)(g). The court explained that the federal analogue to para. (1)(g)- FED. R. CIV. P. 60(b)(5) -is primarily used "to obtain relief from a permanent injunction which has become unnecessary due to a change in conditions." M.L.B. , 122 Wis. 2d at 544. The court reasoned, "This is not a case where changes make prospective application of a previously proper judgment inequitable but rather a case where new information makes the original 'judgment' inequitable." Id.
¶27 Roberta does not explain why the divorce judgment in this case has a prospective effect akin to that of a permanent injunction. As in M.L.B. , Roberta appears to be challenging the propriety of the original judgment, based on information she learned after the judgment was entered. We agree with Bruce that, under these circumstances, Roberta has not presented a developed argument explaining why WIS. STAT. § 806.07(1)(g) is applicable in this case. Accordingly, the circuit court did not erroneously exercise its discretion by declining to grant Roberta relief under para. (1)(g).[3]
E. WISCONSIN STAT. § 806.07(1)(h)
¶28 Roberta also contends the circuit court should have granted her relief from the divorce judgment under WIS. STAT. § 806.07(1)(h), which permits a court to grant relief based on "[a]ny other reasons justifying relief from the operation of the judgment." Relief under § 806.07(1)(h) is appropriate when "extraordinary circumstances exist which justify relief in the interests of justice." Johns v. County of Oneida , 201 Wis. 2d 600, 607, 549 N.W.2d 269 (Ct. App. 1996). When determining whether such extraordinary circumstances exist in a given case, a circuit court should
consider factors relevant to the competing interests of finality of judgments and relief from unjust judgments, including the following: whether the judgment was the result of the conscientious, deliberate and well-informed choice of the claimant; whether the claimant received the effective assistance of counsel; whether relief is sought from a judgment in which there has been no judicial consideration of the merits and the interest of deciding the particular case on the merits outweighs the finality of judgments; whether there is a meritorious defense to the claim; and whether there are intervening circumstances making it inequitable to grant relief.
M.L.B. , 122 Wis. 2d at 552-53.
¶29 Roberta argues four factors weigh in favor of granting her relief from the divorce judgment under WIS. STAT. § 806.07(1)(h) : (1) she was denied the opportunity to make a conscientious, deliberate and well-informed choice about whether to accept the MSA, due to Bruce's "mistake/misrepresentation/the new evidence regarding the VSI repayment, the amount of income [Bruce] was receiving at the time of the [final divorce] hearing, and the VA disability"; (2) because the parties entered into an MSA, "there has been no adjudication on the merits of the property division and maintenance issues"; (3) Bruce has unclean hands; and (4) the "clear injustice" Roberta has sustained as a result of the divorce judgment is "far greater" than any prejudice Bruce would suffer if the judgment were reopened.
¶30 None of Roberta's arguments convince us that the circuit court erroneously exercised its discretion by refusing to grant her relief under WIS. STAT. § 806.07(1)(h). First, we have already concluded that the court properly determined there was no misrepresentation or material mistake of fact regarding Bruce's pension income or the VSI deductions, and, as noted above, Roberta did not raise any argument in the circuit court regarding Bruce's disability pay. Second, although the parties entered into an MSA, the court expressly concluded that agreement was fair and equitable after considering the parties' testimony and the other evidence they presented at the final divorce hearing. Third, while Roberta baldly asserts that Bruce has unclean hands, she does not develop any argument in support of that assertion. Fourth, although Roberta summarily contends that the equities favor granting her relief from the divorce judgment, she does not explain why that is the case.
¶31 To the contrary, the record establishes that both parties had the same information regarding Bruce's pension income and the VSI deductions at the time of the final divorce hearing. Both parties knew that no VSI deduction had been taken from Bruce's first pension check, but neither attempted to repudiate the MSA on that basis. While Roberta argues the parties mistakenly believed the VSI deductions would be permanent, she has not produced sufficient evidence to establish that the payments are, in fact, temporary. In addition, although Roberta contends she would not have agreed to accept only $ 300 per month from Bruce's pension had she been aware of the additional information about the VSI deductions that she learned after the final divorce hearing, she fails to acknowledge that the division of Bruce's military pension was only one facet of the parties' MSA, which also resolved multiple other issues. Given the comprehensive nature of the MSA, the circuit court could reasonably conclude that any additional information about the VSI deductions would not have affected Roberta's decision to accept that agreement. Moreover, the court reasonably found that the difference of $ 186.26 per month between Bruce's anticipated pension income and his actual pension income was not material.
¶32 For all of these reasons, we conclude Roberta has not established the existence of "extraordinary circumstances" justifying relief from the divorce judgment in the interest of justice. Accordingly, the circuit court did not erroneously exercise its discretion by declining to grant Roberta relief under WIS. STAT. § 806.07(1)(h).
II. Motion for reconsideration
¶33 Finally, Roberta argues the circuit court erred by denying her motion for reconsideration. To prevail on a motion for reconsideration, a party must either present newly discovered evidence or establish a manifest error of law or fact. Koepsell's Olde Popcorn Wagons, Inc. v. Koepsell's Festival Popcorn Wagons, Ltd. , 2004 WI App 129, ¶44, 275 Wis. 2d 397, 685 N.W.2d 853. Here, the circuit court reasonably determined Roberta had failed to establish any basis for the court to reconsider its order denying relief from the divorce judgment.
¶34 For the most part, Roberta's motion for reconsideration merely rehashed the same arguments she made in her motion for relief from the divorce judgment. The circuit court properly rejected those arguments for the same reasons it had denied her prior motion.
¶35 Roberta raised two new arguments in her motion for reconsideration. First, she noted Bruce had testified during the hearing on her motion for relief from judgment that he was "mistaken" about the cost of the survivor benefit he had agreed to provide for Roberta. Specifically, Bruce testified he believed at the time of the final divorce hearing that the survivor benefit would be provided at no additional cost to him. He later learned, however, that the survivor benefit would cost him approximately $ 240 per month. Although this testimony shows that Bruce was initially mistaken about the cost of the survivor benefit, Roberta does not explain how that mistake would justify granting her relief from the divorce judgment. She does not argue that Bruce has failed to provide the survivor benefit, as required by the MSA, or that she has been aversely affected in any way by the benefit's unexpected cost to Bruce.
¶36 Second, Roberta's motion for reconsideration asserted that Bruce's net pension income was actually $ 1953.76 per month, "a difference of $ 484.36 from what he represented at the final hearing." However, Roberta cited no evidence supporting her claim that Bruce's monthly pension income was $ 1953.76. The most recent retiree account statement in the record shows that Bruce received a net pension payment of $ 1655.66 in December 2017. Based on the December 2017 statement, the circuit court could reasonably conclude that Bruce's pension income was not "materially different" from what the parties anticipated at the time of the final divorce hearing.
¶37 On appeal, Roberta also contends the circuit court should have granted her reconsideration motion based on "new evidence ... as to the VA disability." However, Roberta failed to raise any argument regarding Bruce's disability pay in the circuit court, and her appellate arguments on that issue are undeveloped. We therefore reject her present claim that the court should have reconsidered its prior decision based on new information about Bruce's disability pay.
By the Court. -Orders affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

This difference was due, in part, to an increase in the benefit amount that occurred after the final divorce hearing.

Roberta observes that the circuit court did not expressly address Wis. Stat. § 806.07(1)(g) in its decision denying her motion for relief from the divorce judgment. However, as noted above, when a circuit court fails to explain the reasoning underlying its discretionary decision, we may search the record to determine whether it supports the court's exercise of discretion. See Randall v. Randall , 2000 WI App 98, ¶7, 235 Wis. 2d 1, 612 N.W.2d 737.