# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.:        2023AP573

Complete Title of Case:

IN RE THE MARRIAGE OF:

ANN MARIE JAHIMIAK,

       PETITIONER-RESPONDENT,

    V.

DAVID RALPH JAHIMIAK,

       RESPONDENT-APPELLANT.

| | |
|---|---|
| Opinion Filed: | December 21, 2023 |
| Submitted on Briefs: | September 14, 2023 |

| | |
|---|---|
| JUDGES: | Kloppenburg, P.J., Blanchard, and Taylor, JJ. |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the respondent-appellant, the cause was submitted on the briefs of *Amy Hetzner* of *Schmidt Rupke Tess-Mattner & Fox, S.C.*, Brookfield. |
| Respondent ATTORNEYS: | On behalf of the petitioner-respondent, the cause was submitted on the brief of *Laura J. Seaton* of *Bosshard Parke, Ltd.*, La Crosse. |

COURT OF APPEALS
DECISION
DATED AND FILED

December 21, 2023

Samuel A. Christensen
Clerk of Court of Appeals

NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP573**

**STATE OF WISCONSIN**

Cir. Ct. No. 1997FA501

**IN COURT OF APPEALS**

IN RE THE MARRIAGE OF:

ANN MARIE JAHIMIAK,

   PETITIONER-RESPONDENT,

V.

DAVID RALPH JAHIMIAK,

   RESPONDENT-APPELLANT.

         APPEAL from an order of the circuit court for La Crosse County: RAMONA A. GONZALEZ, Judge. *Affirmed in part; reversed in part and remanded*.

         Before Kloppenburg, P.J., Blanchard, and Taylor, JJ.

         ¶1      BLANCHARD, J.   David Jahimiak and Ann Jahimiak were divorced in 1999.  David appeals rulings made by the circuit court in 2023 regarding David's

motion to modify maintenance payments and awarding attorney's fees to Ann.[1]  The court's rulings resulted from a hearing de novo that followed a court commissioner order.

¶2      As a threshold issue, David contends that the circuit court lost competency to hold the hearing de novo, and the parties must follow the court commissioner's order, because the circuit court held its hearing more than 60 days after Ann filed a motion seeking the hearing.  *See* WIS. STAT. § 767.17(3) (2021-22) ("The [circuit] court shall hold a hearing de novo no later than 60 days from the date of the filing of the motion" seeking the hearing de novo).[2]  We reject this argument, based on our interpretation of the word "shall" in § 767.17(3).  In a case of first impression, we conclude that this imposes a directory duty on the circuit court, not a mandatory duty, and therefore the court did not lose competency to hold the hearing when it did.

¶3      Separately, David argues that the circuit court erroneously exercised its discretion in ordering modification of his monthly maintenance to $3,850, and that he should pay less.  We conclude that David has shown that the court failed to explain adequately the basis for this award and our independent review of the record does not reveal a basis.  Accordingly, we remand for further proceedings at which the court is to explain the basis for whatever modification decision the court deems appropriate, as the facts existed when the court issued its ruling in February 2023.

---

[1]  Because the parties share a surname, we refer to them by their first names.

[2]  The statute contains an exception to the 60-day limit, not relevant here, for cases involving a proposed relocation of a child to a new residence 100 miles or more from the other parent.  WIS. STAT. § 767.17(3).

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

¶4      David also contends that the circuit court erroneously exercised its discretion in awarding Ann some of her attorney's fees.  We conclude that David fails to show that the court erroneously exercised its discretion in awarding the attorney's fees.

## BACKGROUND

¶5      By the time of the 1999 divorce, Ann and David had been married for more than 27 years.  At that time, Ann was 49, worked as a sales clerk part time, and attended college part time.  David was 51 and worked as a self-employed dentist.  The circuit court awarded Ann "permanent spousal maintenance of $4,500 per month," which "shall continue until the death of either party or [Ann's] remarriage."[3]  However, despite using the term "permanent," the court also stated that "[t]he amount of maintenance may be reviewed by the Court when [David] reaches an appropriate age of retirement, which this Court now anticipates being age 65."[4]

---

[3]  The Hon. John A. Damon presided at the time of the divorce in 1999.  The 2023 rulings challenged in this appeal were made by the Hon. Ramona A. Gonzalez.

[4]  We note for context an earlier appeal to this court in this case.  In 2000, Ann filed a motion in the circuit court (Judge Damon presiding) seeking an order increasing maintenance based on the proposition that David had experienced favorable substantial changes of financial circumstances, while her own financial circumstances had remained the same.  *Jahimiak v. Jahimiak*, No. 2001AP0167, unpublished slip op., ¶4 (WI App July 6, 2001).  The circuit court denied Ann's motion, concluding that David's improved financial circumstances did not constitute a substantial change of circumstances, and Ann appealed.  *Id.*, ¶5.  We affirmed in a per curiam opinion, based in part on the observations that Ann's financial circumstances were "considerably better off than the court contemplated at the time of the divorce," as a result of Ann receiving in the judgment of divorce "liquid assets totaling some $500,000 with no debts," and that Ann conceded that, in the meantime, she had failed to "wisely use[] her liquid assets."  *Id.*, ¶7 & n.2.

¶6      In September 2020, when David was 73, he brought a motion, accompanied by an affidavit, requesting a termination or reduction of his maintenance obligation, pursuant to WIS. STAT. § 767.59, based on factors that included David's work status and health issues. Ann opposed David's motion. The court commissioner held a hearing, followed by a hearing de novo before the circuit court in September 2021. The circuit court denied David's motion, leaving the monthly amount at $4,500. The court determined that there was "no reason" to modify the original maintenance order because David had not yet retired from his dental practice "and there was no substantial change in circumstances in 2021 to change the amount of spousal maintenance." David represented at a September 2021 hearing that he planned to fully retire on November 15, 2021.[5]

¶7      On October 19, 2021, David filed the motion at issue in this appeal, with an accompanying affidavit. He sought "an order terminating maintenance as of November 18th, 2021[,] based on the facts that David … is undergoing a spinal fusion at that time and will be unable to work for a minimum of three months," "with a recovery expected to be approximately 12 months," and that he had "entered an agreement to terminate his ownership in the dental practice and to cease operation as of November 12, 2021."

_____

[5] This resulted in another prior appeal to this court. As referenced below in the course of discussion regarding David's current challenge to the February 2023 court order requiring him to pay attorney's fees, David filed an appeal challenging the September 2021 circuit court decision (Judge Gonzalez presiding) to deny his October 2020 motion to revise his maintenance obligation. *Jahimiak v. Jahimiak*, No. 2021AP1863, unpublished slip op. and order (WI App June 30, 2022). His only argument in this prior appeal was that Ann lost the chance for a hearing de novo because she violated a local rule of the La Crosse County Circuit Court that required motions seeking a hearing de novo to be filed no more than 30 days after the court commissioner's decision. *Id.* In a summary order, we concluded that the circuit court properly exercised its discretion by enlarging the time for Ann to seek the hearing de novo. *Id.*

¶8 After hearing evidence, the court commissioner rendered an oral decision on June 8, 2022. As memorialized in a written order issued on July 25, 2022, the commissioner denied the request to terminate maintenance, but ordered that monthly maintenance payments be reduced to $2,800 and that any outstanding arrearages be vacated.

¶9 On June 10, 2022, Ann filed a motion for a hearing de novo in the circuit court. The motion noticed the hearing for August 22. On August 18, David filed a motion asking the circuit court to refrain from holding the hearing de novo because it had not been held within 60 days of Ann's June 10 motion, as required by WIS. STAT. § 767.17(3).[6]

¶10 The circuit court commenced the hearing de novo on the day noticed in Ann's motion, August 22. At the outset of the hearing, the court briefly addressed and denied David's motion based on the 60-day time limit. The court's reasoning involved the concept that David forfeited an objection based on a lack of court competency when he failed, upon his receipt of Ann's June 10 motion, to object to the August 22 noticed date.[7]

¶11 After taking evidence over the course of one day each in August, September, and October 2022, and considering proposed findings of fact and conclusions of law submitted by the parties, the circuit court issued a written order in February 2023 for the following: David to pay Ann $3,850 per month as of

---

[6] As discussed in more detail in the text below, WIS. STAT. § 767.17 was significantly changed by 2021 Wisconsin Act 205, effective March 20, 2022. Ann does not dispute that the changed provisions were in effect when David filed his motion relying on § 767.17(3).

[7] We need not, and do not, address the circuit court's forfeiture rationale for denying David's motion based on WIS. STAT. § 767.17(3), given our decision that the 60-day time limit is directory.

October 1, 2022, ending upon the death of either party or Ann's remarriage; David to pay Ann $1,200 in outstanding attorney's fees from an appeal to this court, plus $19,000 "trial court attorney fees and costs in order to level the playing field between the parties and to act as a deterrent for any future meritless litigation or bad faith actions." David appeals.

## DISCUSSION

## I. FAILURE TO HOLD DE NOVO HEARING WITHIN 60 DAYS

¶12     There is no dispute that the circuit court held the hearing de novo more than 60 days after Ann moved for it.  Therefore, we must interpret the meaning of "shall" in WIS. STAT. § 767.17(3)'s requirement that "[t]he court *shall* hold a hearing de novo no later than 60 days from the date of the filing of the motion …." (Emphasis added.)  Whether the circuit court lost competency to hold the hearing de novo turns on whether the 60-day time limit is mandatory or directory. *See State v. Olson*, 2019 WI App 61, ¶11, 389 Wis. 2d 257, 936 N.W.2d 178 ("A party's failure to comply with a statutory time limit deprives a court of competency to proceed only when the time limit is mandatory.").  If "shall" in this context is mandatory, then the timing of the hearing deprived the court of competency to hold the hearing.  But if "shall" is directory, then the court retained competency. *See id.* Whether a statutory time limit is mandatory or directory presents an issue of statutory interpretation that we review de novo. *Id.*, ¶10.

¶13     "The word 'shall' is presumed mandatory when it appears in a statute." *Id.*, ¶12.  "When used in a statute imposing a time limit, however, the word 'shall' can nevertheless be 'construed as directory if necessary to carry out the legislature's clear intent.'" *Id.* (quoting *Karow v. Milwaukee Cnty. Civil Serv. Comm'n*, 82 Wis. 2d 565, 571, 263 N.W.2d 214 (1978)).

¶14 We rely on the following factors to determine whether a statutory time limit using the word "shall" is mandatory or directory:

> (1) the purpose of the statute; (2) the statute's history; (3) whether a penalty or prohibition is imposed for the violation of the time limit; and (4) the consequences of interpreting the statutory time limit as either mandatory or directory, including whether the failure to act within the time limit works an injury or wrong [to persons other than the party that failed to act within the limit].

*Olson*, 389 Wis. 2d 257, ¶13 (citing *State v. R.R.E.*, 162 Wis. 2d 698, 708, 711, 470 N.W.2d 283 (1991) (stating that pertinent "factors" "include 'the objectives sought to be accomplished by the statute, its history, the consequences which would follow from the alternative interpretations, and whether a penalty is imposed for its violation.'" (quoted source omitted))).[8]

¶15 We first provide additional background for context and then explain our conclusions based on each of the four factors.[9]

**A. Additional background**

¶16 Before WIS. STAT. § 767.17 was repealed and recreated in 2021 Wisconsin Act 205, the pertinent statutes were spare. Section 767.17 (2019-20) stated in its entirety: "A decision of a circuit court commissioner under [Chapter 767, "Actions Affecting the Family"] is reviewable under [WIS. STAT. §] 757.69(8)." In turn, § 757.69 addressed the powers and duties of court

---

[8] We observe that, given the potential for "shall" to be ambiguous depending on its statutory context, the combined use of these four factors to determine legislative intent is a specific application of the general rule that when a statute is ambiguous courts may look beyond intrinsic sources and consider extrinsic sources such as legislative history. *See State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶¶48-50, 271 Wis. 2d 633, 681 N.W.2d 110.

[9] In their initial briefing, neither side sufficiently developed an argument on the mandatory-directory issue. We requested, and have now reviewed, supplemental letter briefs.

commissioners. The referenced subsection (8) stated in its entirety (as it continues

to state after enactment of Act 205):

> Any decision of a circuit court commissioner shall be reviewed by the judge of the branch of court to which the case has been assigned, upon motion of any party. Any determination, order, or ruling by a circuit court commissioner may be certified to the branch of court to which the case has been assigned, upon a motion of any party for a hearing de novo.

Sec. 757.69(8) (2019-20). Also pertinent for context are WIS. STAT. §§ 757.68(1)

and 757.69(1), which have not been changed by Act 205 and which create the court

commissioner role within Wisconsin's circuit courts. They define the

commissioners' powers and duties—with commissioners to be appointed in

numbers deemed "necessary for the efficient administration of judicial business

within the circuit courts" of Wisconsin counties. *See* § 757.68(1).

¶17 Although our primary focus is subsection (3), we now quote in its

entirety WIS. STAT. § 767.17 as repealed and recreated:

> **De novo review.** **(1)** RIGHT TO DE NOVO REVIEW. Any decision of a circuit court commissioner under [WIS. STAT. ch. 767, "Actions Affecting the Family"] shall be reviewed by the judge of the branch of court to which the case has been assigned, upon motion of any party. Any determination, order, or ruling by a circuit court commissioner under this chapter may be certified to the branch of court to which the case has been assigned, upon a motion of any party for a hearing de novo. A party is required to be present at the hearing in order to seek a de novo review. The right to seek a de novo review does not apply to stipulations entered into between the parties. Notices requesting a hearing de novo will not stay the order unless the trial court specifically grants a stay of the order.
>
> **(2)** TIME LIMITS. If a party seeks to have the trial court conduct a hearing de novo of a determination, order, or ruling entered by a court commissioner in an action affecting the family under this chapter, the party shall file a motion for a hearing de novo within 20 calendar days of the oral

> decision of the court commissioner or within 20 calendar days of the mailing of a written decision or order by the court commissioner if the decision or order was not given orally by the court commissioner at the time of the hearing. As set forth under [WIS. STAT. §] 801.15(1), 20 calendar days are counted consecutively and include weekends and holidays.
>
> **(3)** HEARING. The court shall hold a hearing de novo no later than 60 days from the date of the filing of the motion under this section, except as otherwise required under [WIS. STAT.] 767.481[, addressing cases involving a proposed relocation of a child to a new residence 100 miles or more from the other parent].

¶18 The phrase "hearing de novo" is used consistently in both the old and new versions of WIS. STAT. § 767.17. Pre-Act 205 case law established what this means, and neither party here argues that it has a different meaning now: the circuit court conducts "literally a new hearing," which requires the circuit court to take "a fresh look at the issues, including the taking of testimony." *See **Stuligross v. Stuligross***, 2009 WI App 25, ¶¶12-13, 316 Wis. 2d 344, 763 N.W.2d 241 (a de novo hearing is a "'new hearing of a matter, conducted as if the original hearing had not taken place.'" (quoting BLACK'S LAW DICTIONARY 738 (8th ed. 2004)). In this case, for example, the circuit court extended the hearing over the course of three days in three successive months in order to accomplish this "fresh look" based on all relevant evidence.

### B. Legislative purposes of WIS. STAT. § 767.17(3)

¶19 The first factor, as identified above, involves "'the objectives sought to be accomplished by the statute.'" ***R.R.E.***, 162 Wis. 2d at 708 (quoted source omitted). We conclude that on balance this factor does not favor either a mandatory or directory construction of "shall," given potentially competing legislative objectives. In short, two evident objectives support the directory interpretation while two other evident objectives support the mandatory interpretation. The

directory-supporting objectives are creating efficiency for circuit courts and providing for circuit court reviews of commissioner rulings. The mandatory-supporting objectives are creating statewide uniformity in resolving disputes in family law cases and assuring promptness in resolving such disputes.

¶20 While it pre-dated Act 205, we consider the following observations from an opinion of this court to be pertinent to an understanding of some legislative purposes behind WIS. STAT. § 767.17, even after the statute was repealed and recreated, based on what remains in the statutes after the legislative changes. *See Nehls v. Nehls*, 2012 WI App 85, 343 Wis. 2d 499, 819 N.W.2d 335. In *Nehls*, we noted that the legislature has authorized the creation of the court commissioner position, including directing the use of commissioners to resolve disputes in family law cases, "to increase efficiency while still affording the safeguard of circuit court review of all decisions, upon motion, and a de novo hearing in contested matters." *Id.*, ¶13. In other words, two purposes are to use court commissioner hearings to help the circuit courts operate more efficiently and to "afford[] the safeguard of circuit court review." *See* WIS. STAT. § 757.68(1) (commissioner appointments to be made as "necessary for the efficient administration of judicial business within the circuit courts").

¶21 The purposes of efficiency and "safeguard of circuit court review" continue to be objectives of WIS. STAT. § 767.17, even after legislative changes. In support, we note that the legislature has maintained the court commissioner function of providing the parties with an initial ruling by a neutral decision maker, while also maintaining a de novo level of review by circuit courts—providing the parties with an opportunity for a new hearing without deference to prior decisions of the court commissioner. Further, circuit court review remains necessary for the parties to

retain the right to appellate review.[10] The circuit courts and parties continue to benefit from the efficiency of court commissioner rulings, some percentage of which, for example, are not appealed to the circuit court. At the same time, the parties retain the option to obtain a completely "fresh look" by an elected judge, not an appointed court commissioner, as well as review by the appellate courts. These objectives of efficiency and the safeguard of circuit court (and appellate) review are not in themselves diminished by the changes to § 767.17.

¶22 At the same time, also evident are other potentially competing legislative purposes: creating uniformity in time limits applied by individual circuit courts and across the state's counties (given the potential for varying local rules between counties); and encouraging promptness in the resolution of family law disputes. Both the new 20-day time limit for the filing of a motion for hearing de novo, WIS. STAT. § 767.17(2), and the new 60-day time limit for the holding of a hearing de novo, § 767.17(3), are intended to create a statewide presumptive 80-day target date for resolution of a family law issue from the time the court commissioner acts to the time when a requested hearing de novo is "held." As to uniformity, this has virtues that include allowing counsel and parties to accurately anticipate timelines. As to promptness, its advantages are obvious for family law disputes, especially those affecting children.

¶23 We recognize that, in itself, a legislative goal of establishing a uniform time limit generally counts in favor of a mandatory interpretation. At the same time,

---

[10] A party cannot appeal a circuit court commissioner's written order, but must instead first obtain a final judgment or order from a circuit court. *See* WIS. STAT. RULE 809.01(1); *Dane County v. C.M.B.*, 165 Wis. 2d 703, 709, 478 N.W.2d 385 (1992). Thus, a party deprived of a chance to obtain a final judgment or order on the merits in the circuit court is deprived of any chance for appellate court review of the only merits decision, the one rendered by the court commissioner.

we reject David's attempt to suggest that one opinion of our supreme court stands for the proposition that, across legal contexts, a legislative goal of statewide uniformity that involves use of the word "shall" dictates a mandatory interpretation. *See **Wagner v. State Med. Examining Bd.***, 181 Wis. 2d 633, 643-44, 511 N.W.2d 874 (1994) (construing as mandatory deadlines for service of notices of appearance and for agency transmission of records of administrative proceedings set forth in statutes that used "shall" in WIS. STAT. ch. 227). Because of its differing context, the brief discussion by our supreme court in ***Wagner*** appears to add nothing to the analysis here. *See **id.*** The court appeared to rest its analysis on the specific structure and purposes of the administrative law defined in chapter 227 and the court did not intend, as David suggests, to announce a rule of interpretation that equates the goal of uniformity with the goal of mandatory application across all statutory contexts when the word "shall" appears. Further, we are not aware of any feature of WIS. STAT. ch. 767 or case law governing family law actions that is meaningfully analogous to the chapter 227 context, as opposed to the many obvious differences. In addition, to apply ***Wagner*** as broadly as David suggests would create a rule that all time limits created by the legislature are mandatory, which case law explains is not the rule. *See **Olson***, 389 Wis. 2d 257, ¶10.

¶24 Further, regarding the promptness purpose, we discern nothing about the 60-day time limit that ties into other statutes or case law in a way that would elevate this purpose to the same level as safeguarding circuit and appellate court review. Put differently, we see no indication in the language of WIS. STAT. § 767.17(3) or closely related statutes to suggest that the legislative purpose of promptness could not be reasonably served by directory time limits.

¶25 David argues that a further clue to legislative purpose is found in the word "may" that appears in the following sentence of WIS. STAT. § 767.17(1): "Any

determination, order, or ruling by a circuit court commissioner under this chapter *may* be certified to the branch of court to which the case has been assigned, upon a motion of any party for a hearing de novo." (Emphasis added.) Based on this use of "may," David evokes the proposition that "[w]hen the words 'shall' and 'may' are used in the same section of a statute, one can infer that the legislature was aware of the different denotations and intended the words to have their precise meanings." *See Karow*, 82 Wis. 2d at 570-71. We interpret the phrase "the same section of a statute" in *Karow* to mean the same portion or subpart of a statute. With that interpretation in mind, the "may" in § 767.17(1) that David cites is not in "the same section" of the statute as the "shall" that is at issue here. In the statutory text at issue in *Karow*, there were a series of statements about what a commission "shall" do, immediately followed by a statement about what the commission "may" do, appearing to suggest a distinction in purposes. *Id.* In contrast here, as far as David explains, the lone "may" in § 767.17(1)—used in the passive voice in connection with certification to a judicial branch—suggests nothing about the timeline-related "shall" in § 767.17(3). David fails to explain how this particular use of "may," which is unrelated and not in the same statutory subpart, could shed light on legislative purpose in using the term "shall" in § 767.17(3).[11]

### C. History of WIS. STAT. § 767.17(3)

¶26　We conclude that the history of WIS. STAT. § 767.17(3) may favor the mandatory side of the equation, but only slightly. The timelines in subsections (2) and (3) are entirely new; there had been no statutory timelines in this context before.

---

[11] Separately, David purports to rely on a Wisconsin Legislative Council Act Memo regarding Act 205 around the time of its enactment, but the memo says nothing regarding the mandatory-directory issue. Instead, it merely states the obvious: that the act "creates specific timelines for de novo reviews in actions affecting the family." The issue here is not whether Act 205 creates specific timelines but whether those timelines are mandatory or directory.

But the legislature created them without providing clues as to whether the time limits are mandatory or directory.

¶27    Thus, while the addition of time limits could count in favor of his argument, we reject David's implied argument that the fact that the 60-day time limit, as well as the companion 20-day time limit, are new to this statutory scheme in itself signals that the promptness rationale is paramount over other legislative purposes. It appears about as likely, for example, that the legislature decided to impose a uniform set of statewide timelines for these time periods, without undermining the purpose of safeguarding circuit court and appellate review. As David acknowledges, before Act 205, "the time limits imposed by local rule[s] varied from county to county," which is a circumstance that the legislature apparently intended to change. This is consistent with pre-Act 205 case law, which reflects that Wisconsin circuit courts have used local court rules, so long as they were not inconsistent with WIS. STAT. §§ 767.17 and 757.69 (2019-20), to define further a party's ability to obtain a hearing de novo. *See Nehls*, 343 Wis. 2d 499 (consent given by a party to the entry of a circuit court commissioner order without a hearing acted as "waive[r]" of the party's ability to obtain a hearing de novo under a local rule; local rule governed because it was not inconsistent with pertinent statutes). The uniformity purpose is furthered under the directory interpretation, even if not to the greater degree that would occur under a mandatory interpretation.

### D. Penalty or a prohibition imposed for violation of WIS. STAT. § 767.17(3)

¶28    WISCONSIN STAT. § 767.17(3) lacks any penalty or prohibition for a violation of the 60-day time limit, which favors the directory interpretation. "Such an omission generally supports construing a statutory time limit as directory," although it is "only one factor to be considered." *Olson*, 389 Wis. 2d 257, ¶29.

¶29 This factor is especially notable here because the failure of a *circuit court* to "hold" a hearing de novo within the 60 days might result even if *the party* seeking the hearing has been scrupulously prompt at each stage of the litigation. Given that dynamic, it is not clear what an appropriate penalty or prohibition would entail. David merely asserts, without providing supporting authority, that "[t]here are rarely penalties included in statutes where the obligation is placed on the court rather than on a party." This assertion does not assist in the analysis.

**E. Consequences of interpretation and potential injuries**

¶30 We conclude that the consequences also strongly favor the directory interpretation. If the 60-day limit precludes a party from litigating a dispute in the circuit court because a hearing de novo was not held within that timeframe, the injury to the party seeking the hearing may be severe—the permanent foreclosure of additional litigation that could bring potential relief in either circuit court or an appellate court.

¶31 It is true that delay in the adjudication at the circuit-court level in a family law matter could result in at least *temporary* injury to one party or the other. But mere delay in holding a circuit court hearing de novo stands in sharp contrast to an opinion on which David relies that involved the complete absence of adjudication during and after the period covered by a statutory time limit, resulting in a county employee not being able to work and receive paychecks. *See **Karow***, 82 Wis. 2d at 572-73 (construing as "mandatory" a statutory three-week time limit for the holding of a disciplinary hearing against Karow, taking into account the language of the statute and its evident objectives, as well as the financial injury suffered by Karow, who was not working and was not receiving pay checks pending the disciplinary hearing). Turning to the context here, after a court commissioner rules, the parties

15

have the concrete benefit of a decision by a neutral decision maker to whom the parties had an opportunity to make their arguments. Further, to the extent that the circuit court's ruling on a topic varies from the commissioner's ruling, a party can ask the court to fashion relief for any inequity or loss that might have resulted from the commissioner's ruling in the meantime.

¶32    As Ann points out, the most likely injuries that one would expect to result from construing "shall" as mandatory in this context would be that parties in family law matters would be deprived of opportunities for both circuit court and appellate court reviews, often as a result of either circuit court calendar congestion or extenuating circumstances such as illnesses or personal emergencies over which the circuit courts have no control. Thus, possibly without the slightest fault of his or her own, or for that matter the slightest fault of a circuit court, a party would have no recourse or remedy from a possibly erroneous commissioner ruling. Therefore, the construction with the best prospects to avoid injuries across cases would be to deem "shall" as directory.

¶33    David does not make a general argument on the potential injury issue but instead tries to argue that in this case it was him, and not Ann, who was injured by the fact that the circuit court held the hearing after the 60-day period. It is sufficient to explain that David's case-specific points are not persuasive standing on their own, much less do they succeed as stand-ins for a general argument regarding the proper construction of WIS. STAT. § 767.17(3).

¶34    Notably, WIS. STAT. § 767.17(3) provides that the circuit court "shall *hold* a hearing de novo no later than 60 days from the date of the filing of the motion" for a hearing. It does not provide that the court "shall commence" or "shall schedule" a hearing within that time. *Cf*. WIS. STAT. § 970.03(2) ("The preliminary

16

examination shall be *commenced* ... within 10 days [of an initial appearance] if [a] defendant is in custody and bail has been fixed in excess of $500. On stipulation of the parties or on motion and for cause, the court may extend such time." (emphasis added)). Under the logic of David's interpretation, the legislature has made a surprising decision. That would be to mandate the *completion* of a hearing de novo within 60 days. This would limit the efficiency of the circuit courts and nullify the safeguard of circuit court or appellate review in all family law cases in which a scheduling issue arising for the court, counsel, a party, or a witness—including such extenuating circumstances as illnesses and personal emergencies—causes a hearing de novo not to be completed within the 60 days.

¶35 Significantly, impediments to holding a hearing de novo in a family law case within 60 days will include the many other cases of all types on the docket of the assigned circuit court, which of course compete for time on the court's calendar. Some of these other cases will themselves require prioritization for various reasons. Further, courts cannot unreasonably shorten any of the contested matters over which they preside. For example, if the court has a two-week homicide trial set to go, followed by a one-week armed robbery trial, these two cases immediately occupy a large portion of the court's short-term calendar and the court cannot unreasonably shorten the trials.

¶36 In addition, turning to case-specific issues in a family law case that needs a hearing de novo, the circuit court has to deal with scheduling conflicts of the attorneys and of any required participant in the case, as well as unanticipated illnesses or emergencies experienced by any required participant.

¶37 As Ann points out, this case provides an apt example. It appears that the no doubt busy circuit court was able to take all the evidence offered by the parties

(including experts called by David) only by continuing the hearing across three days in successive months. But under the logic of David's argument, the legislative intent to accomplish the uniformity and promptness goals alone would prohibit such scheduling—no matter what else is occurring on the circuit court's docket, no matter how necessary or complex the evidence is in the family law case, and no matter how blameless the party is in the family law matter who would lose all possibility of circuit court or appellate review.

¶38 David makes an argument, apparently on the consequences factor, that is difficult to follow. The argument is based on the fact that, under WIS. STAT. § 767.17(1), a motion for a hearing de novo does not by itself have the effect of staying a court commissioner's order; instead, a circuit court must affirmatively grant a stay of a commissioner's order. Based on this provision, David asserts that the legislature could not have intended for commissioner orders to "remain in place for an indefinite period of time." Whatever David intends to argue along these lines, we fail to see how anything about the rule assigning circuit courts the authority to stay commissioner orders supports his argument about legislative purpose. If anything, this rule would appear to provide further support for the idea that the legislature in Act 205 continues to prioritize the safeguarding of circuit court review of contested family law matters, by giving circuit courts the sole decision-making authority regarding potential stays of commissioners' orders.

¶39 David argues that deeming "shall" to be directory in this context "would mean that local circuit courts could make their own rules," suggesting that courts would sometimes or even typically ignore a merely directory provision. But David fails to explain why the legislature would suspect or assume that circuit courts would disregard directory time limits. For that matter, David fails to explain why the legislature would suspect or assume that courts would prefer to delay hearings

de novo instead of resolving them in the most expeditious manner possible, consistent with the 60-day limit, even if it is construed to be directory. It is common knowledge that circuit courts and those who assist courts in scheduling make difficult choices on a daily basis regarding case priorities and scheduling of both contested and uncontested matters. We see no reason to think that the legislature would anticipate that courts would fail to make sincere and generally effective efforts to abide by this time limit when making scheduling decisions unless "shall" were interpreted to be mandatory.

### F. Combined result of factors

¶40 Considering these factors as a whole, we conclude that the 60-day time limit in WIS. STAT. § 767.17(3) is directory, not mandatory. As we have discussed, we are especially struck by the fact that the mandatory interpretation would subject parties in family law cases to potentially extremely harsh consequences, losing all possibility of either circuit court review of court commissioner rulings or appellate court review of circuit court rulings that can fall outside the control of parties and circuit courts. If enlargement of the 60-day window were impossible, parties through no fault of their own could forever lose the ability to obtain the benefits of valuable legal rights.

## II. MODIFICATION OF MAINTENANCE

¶41 As explained in more detail below, we conclude that the circuit court failed to demonstrate a rational process that could support some material aspects of its modification of the maintenance award. Accordingly, we reverse and remand to provide the court with the opportunity to properly exercise its discretion, proceeding based on the existing record or taking such additional evidence as it deems appropriate. *See* ***King v. King***, 224 Wis. 2d 235, 254, 590 N.W.2d 480 (1999)

("[W]hen a reviewing court finds that a circuit court erroneously exercised its discretion in determining maintenance, the correct course of action is to reverse the award and remand the case to the circuit court so that it may properly exercise its discretion."). We emphasize that, because we are not able to exercise the discretion that belongs to the circuit court, our analysis is primarily limited to simply explaining why reversal and remand is necessary, without ourselves purporting to resolve various related issues or to determine an appropriate outcome that is based on the facts that existed when the court issued its ruling on February 1, 2023.

### A. Legal standards

¶42    A circuit court "may" "[r]evise and alter" a divorce maintenance award when the movant demonstrates "a substantial change in circumstances warranting the proposed modification." WIS. STAT. § 767.59(1c)(a)1., (1f)(a); *Rohde-Giovanni v. Baumgart*, 2004 WI 27, ¶30, 269 Wis. 2d 598, 676 N.W.2d 452. A "substantial change" in circumstances "'must relate to a change in the financial circumstances of the parties.'" *Kenyon v. Kenyon*, 2004 WI 147, ¶13, 277 Wis. 2d 47, 690 N.W.2d 251 (quoted source omitted). A "substantial change of circumstances" determination calls for a comparison of the facts on which the prior maintenance award was based to the new facts in order to ascertain whether "the difference is enough to justify the court's considering whether to modify the order." *Licary v. Licary*, 168 Wis. 2d 686, 692, 484 N.W.2d 371 (Ct. App. 1992). A court reviewing a modification request should adhere to the findings of fact made in the previous proceeding setting maintenance and may not retry the factual determinations decided in that proceeding. *Kenyon*, 277 Wis. 2d 47, ¶27.

¶43    As part of this analysis, the circuit court "must consider the same factors governing the original determination of maintenance" under WIS. STAT.

§ 767.56. *Poindexter v. Poindexter*, 142 Wis. 2d 517, 531-32, 419 N.W.2d 223 (1988) (referring to WIS. STAT. § 767.26 (1987-88), which has been amended and is now § 767.56). The factors provided in § 767.56 are designed to further two distinct maintenance goals: (1) support of the recipient spouse "in accordance with the needs and earning capacities of both the recipient spouse and the payor spouse"; and (2) "a fair and equitable financial arrangement between the parties." *Kenyon*, 277 Wis. 2d 47, ¶29; *Rohde-Giovanni*, 269 Wis. 2d 598, ¶29.

¶44    A circuit court's decision as to whether there has been a substantial change of circumstances is a discretionary one that will be affirmed if there is a reasonable basis in the record to support it. *Cashin v. Cashin*, 2004 WI App 92, ¶44, 273 Wis. 2d 754, 681 N.W.2d 255; *Rohde-Giovanni*, 269 Wis. 2d 598, ¶17.

¶45    If there has been a substantial change of circumstances, the decision whether to modify the amount or duration of maintenance is committed to the circuit court's sound discretion. *Rohde-Giovanni*, 269 Wis. 2d 598, ¶17.

¶46    An erroneous exercise of discretion involves a failure to consider the relevant factors, basing an award on factual errors, making an error of law, or granting an excessive or inadequate award. *Id.*, ¶18. "[A] discretionary determination must be the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination." *Hartung v. Hartung*, 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981). We affirm if the court "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *Long v. Long*, 196 Wis. 2d 691, 695, 539 N.W.2d 462 (Ct. App. 1995).

**B. Additional background**

¶47     For purposes of calculating maintenance in 1999, Judge Damon found Ann's annual income to be $10,000, although the court characterized this as a mere "guess" based in part on her then part-time annual salary of $5,000. The court noted that there was "credible evidence as to the limited nature of [her] potential earning capacity," and that her "longstanding depression will require significant ongoing treatment, and it will further affect her ability to work full-time." "There is little likelihood that [Ann] will ever earn income sufficient to adequately provide for her own support at anywhere near the level she enjoyed during the marriage."

¶48     Judge Damon found David's annual income to be $165,484. The court found that David had not "over the last number of years" "pursued" earnings "to his full capacity." Instead, he had "expended substantial energy and money racing and restoring motor vehicles" as an "avocation."

¶49     In setting David's maintenance obligation at $4,500 a month, potentially to be revisited upon David's retirement, the court took into account the facts that the property division gave David "a large debt load" and that Ann would have "substantial assets such as the home free and clear" going forward. The net marital estate totaled almost $1.7 million, and Ann would receive a property settlement of one-half that amount.

¶50     We turn to the 2023 hearing de novo before Judge Gonzalez. Ann requested this hearing after a court commissioner reduced David's monthly maintenance obligation from $4,500 to $2,800. Ann argued in part to the circuit court that David's

> lifestyle precludes his argument that he cannot afford
> spousal maintenance. He has 3 pieces of real estate, two of

which are rentals. He has numerous vehicles, including a vintage race car. He is able to hire one attorney for trial and another for the appeal. He had 3 expert witnesses involved in his case ….

Ann proposed $3,850 in monthly permanent maintenance. She based this request in substantial part on a chart purporting to show total monthly gross income to David of $11,643 and total monthly gross income to Ann of $3,072. Ann's chart included the following categories as purported monthly gross income to David, in addition to payments from social security and required minimum distributions from an individual retirement account: $1,242 monthly in dividends and interest; $1,996 monthly in rent income; and $3,333 monthly in "[s]tock [p]roceeds." Explaining the $3,333 figure, the chart stated: "$40,000 Remains [with David] ÷ 12 months = $3,333." In other words, Ann asserted that, because David held stocks with a total value of $40,000, his monthly gross income included one twelfth of that amount.

¶51 David submitted that he had stopped working as a dentist in November 2021 and the following month underwent spinal fusion surgery, "which limited his ability to lift to a maximum of 25 lbs." He contended in part that he owned "a small home with a mortgage," a former office building, and a "small rental," and that he "is not involved in stock trading and had approximately $40,000 in assets" in a trading account, "prior to the payment of the 2022 [r]eal estate taxes." David proposed that his monthly maintenance obligation be reduced to $1,150, asserting that this would represent "[a]n equal division of income at this time."

¶52 In its order, the circuit court awarded Ann the $3,850 monthly "permanent" maintenance that she requested. The order reproduced, and appeared to rely on, Ann's monthly gross income chart referenced above. The court also repeatedly made negative credibility findings regarding David, including "presum[ing]" that David possessed "missing cash" that he was not accounting for,

23

although the court did not attempt to quantify the amount of any "missing cash." Further, the court found that David had "purposely" taken losses on stocks worth more than $800,000, by pretending to be "an incompetent stock trader," in order to support his case for paying less in maintenance to Ann.

¶53    In sum, the circuit court set the maintenance amount at a new level, relying substantially on Ann's monthly gross income chart.

### C. Arguments and analysis

¶54    Regarding maintenance modification, David primarily makes two related arguments, one specific and the other more general. The more specific argument is that there was no evidence before the circuit court to support the specific dividends and interest, rental income, or stock proceeds figures (collectively, "the gross income figures") that Ann attributed to David in her gross income chart, which the court adopted as its findings. David's more general primary argument is that the court failed to explain how, based on particular evidence, it reached the new monthly maintenance figure of $3,850. He submits that this problem was exacerbated by the court's decision not to consider testimony that could have supported his argument that Ann failed to show initiative or effort to become self-supporting, or at least more self-supporting, in the years since the divorce. Beyond those arguments, David also contends that the court "wholly failed to consider whether it was fair to David to continue his maintenance obligation to Ann."

¶55    Ann has nothing clear to say on the more specific argument about the gross income figures. This is all the more puzzling because she proposed these numbers to the circuit court. Ann emphasizes that the circuit court found that David lacked credibility, but she fails to develop an argument that could support any of the gross income figures based on the court's finding of a lack of credibility. As a result,

Ann does not directly dispute David's detailed and supported arguments that, at least based on the record created to date: witnesses testified that during the relevant time period David did not hold any income-producing stocks or other investments; the only admissible evidence regarding his rental income showed net losses; and there was no logic to attributing monthly "income" to David based on one-twelfth of the value of the remaining stocks that David held. Our "task on appeal is to 'examine the record, not for facts to support a finding the trial court did not make or could have made, but for facts to support the finding the trial court did make.'" *Johnson v. Merta*, 95 Wis. 2d 141, 154, 289 N.W.2d 813 (1980) (quoted source omitted). Here, we are left with considerable uncertainty as to what evidence supported the gross income figures.

¶56     David's winning argument regarding the lack of an evidentiary basis for the gross income figures goes a long way toward proving his more general primary argument that, in essentially adopting Ann's proposed gross income figures for David, the circuit court failed to explain how it reached the new monthly maintenance amount. Beyond that, we are unable to discern in the court's decision any logical path to the new monthly award of $3,850. Ann vaguely suggests that the fact that the court lowered the monthly award of $4,500 to $3,850 demonstrates application of the support and fairness objectives. But this does not provide a basis for us to conclude that the court "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *See Long*, 196 Wis. 2d at 695.

¶57     Recall that our exclusive focus on this issue involves David's challenge to the maintenance aspect of the circuit court's February 1, 2023 order. Therefore, to the extent that there has been further litigation in this case in the circuit court in the meantime, or to the extent that following remand the parties submit

pleadings or make arguments in the circuit court regarding alleged facts that have occurred since February 2023, all of that would fall outside the scope of this opinion and would be subject to new rulings by the circuit court that we could not now address.

¶58 In addition, we do not direct that the circuit court must hold a new evidentiary hearing on remand, nor that the court may not do so. Instead, the court may consider whether, in its judgment, it is appropriate for the court to decide David's motion based on the evidence that the court has already been presented with, taking argument from the parties as the court deems appropriate. Although we reverse this aspect of the order on appeal, this opinion should not be interpreted as preventing the court from considering the same facts underlying its previous decision.[12]

---

[12] To assist the circuit court and the parties following remand we reach the following two legal conclusions on issues that have been briefed by the parties in this appeal.

First, we agree with David that following remand the circuit court may not decline to consider evidence or argument that could support an argument that Ann lacked initiative or failed to expend effort to become self-supporting on the ground that such evidence or argument would be irrelevant. *See Vander Perren v. Vander Perren*, 105 Wis. 2d 219, 230, 313 N.W.2d 813 (1982) (maintenance "is not to be viewed as a permanent annuity," but instead is "designed to maintain a party at an appropriate standard of living, under the facts and circumstances of the individual case, until the party exercising reasonable diligence has reached a level of income where maintenance is no longer necessary."). Our supreme court expressly articulated this principle in the contexts of both an original award of maintenance and an order "terminating maintenance." *Id.* Again, however, we take no position on what the circuit court here might find along these lines, or on how any finding might figure into a proper analysis. We simply agree with David that the circuit court made statements that could be construed as erroneously taking the position that this "exercising reasonable diligence" concept is not a feature of Wisconsin law.

### III. ATTORNEY'S FEES

¶59　The circuit court ordered David to pay Ann $19,000 in fees that Ann was billed by her attorney between April 2020—when David unilaterally stopped paying the then-required monthly maintenance of $4,500—through January 17, 2022, based on the court's finding that David "has engaged in a bad faith campaign to eliminate the valid permanent order." This order was based in part on detailed billing records submitted to the court by Ann's attorney.[13]

¶60　The parties disagree about whether the circuit court erroneously exercised its discretion in ordering payment of the $19,000 in fees based on the overtrial doctrine.[14] We conclude that David fails to show an erroneous exercise of discretion.

¶61　"The overtrial doctrine may be invoked in family law cases when one party's unreasonable approach to litigation causes the other party to incur extra and

---

Second, we reject David's argument that the circuit court could not find that David, as he now puts it, "deliberately lost $800,000 of his own money [invested in stocks] in an effort to avoid paying" "a $54,000 annual [maintenance] obligation," because it would have "defie[d] logic" for him to do so. To be sure, this would have been an irrational financial decision, but people sometimes make irrational financial decisions. More than that, people can act in ways that a neutral observer might view as highly irrational—not least in the context of emotionally charged family law disputes. If the circuit court on remand continues to find that David intentionally lost this money, and the court can explain how this plays a legitimate role in the proper analysis of a motion to modify a maintenance award, the court is not precluded from doing so on the ground that such conduct would defy logic.

[13] As noted above, the circuit court also ordered David to pay Ann $1,200 to cover a portion of the attorney's fees she was billed in connection with David's 2021 appeal referenced above in note 5, regarding the local rule of the La Crosse County Circuit Court. David references the $1,200 portion of the attorney's fees award in this appeal, but he fails to develop any argument directed toward the $1,200. We affirm this aspect of the award based on the lack of any argument.

[14] We resolve this issue based on the application of the overtrial doctrine and therefore have no need to reach the arguments of the parties based on WIS. STAT. § 767.241(1)(a), which permits a family court to order one side to pay the other side's attorney's fees under certain circumstances.

unnecessary fees." ***Hottenroth v. Hetsko***, 2006 WI App 249, ¶49, 298 Wis. 2d 200, 727 N.W.2d 38; ***Zhang v. Yu***, 2001 WI App 267, ¶16, 248 Wis. 2d 913, 637 N.W.2d 754 ("[T]he circuit court has inherent authority to manage civil litigation within its jurisdiction, to preserve the effectiveness of the judicial system and to enforce compliance with its orders fashioned to prevent overtrial."). "Whether excessive litigation occurred is a question committed to the discretion of the circuit court." ***Hottenroth***, 298 Wis. 2d 200, ¶49.

¶62    David does not challenge any particular entry or subset of entries in the billing records that Ann submitted to the circuit court and his arguments are not well developed. We now explain why we reject his limited arguments on this topic.

¶63    David asserts that, because Ann did not file a "formal motion" or provide "the ground upon which she was seeking such fees," this violated the requirement that David receive notice and an opportunity to be heard on this issue. *See* ***Zhang***, 248 Wis. 2d 913, ¶¶14, 16 (stating that a party must be given notice and an opportunity to be heard on an overtrial claim). But Ann made her position clear in submissions to the circuit court in August 2022: she claimed entitlement to these fees because David caused them through unreasonable and irrelevant arguments, cancellations, and delays. This sufficiently stated a claim for attorney's fees based on overtrial. David also fails to persuade us that he lacked ample opportunities to argue that the court should not award these fees in order to, as the court stated in making its ruling, "level the playing field between the parties and to act as a deterrent for any future meritless litigation or bad faith actions."

¶64    David argues that the circuit court could not require him to pay attorney's fees based on overtrial because "[i]t was undisputed at trial that David's motion had merit due to his retirement." This argument is off point. The issue is

not whether David made individual arguments in the litigation that had merit, such as his position that there had been a substantial change of circumstances due to his retirement and health issues. The issue is whether the court had a basis to reasonably determine that he had engaged in "unreasonable" litigation that had "result[ed] in unnecessary proceedings or unnecessarily protracted proceedings, together with the attendant preparation time." *See Zhang*, 248 Wis. 2d 913, ¶13.

¶65 David confusingly asserts that he could not have engaged in overtrial because Ann "fail[ed] to reach … an out-of-court settlement," and because Ann sought hearings de novo of two court commissioner rulings. This is also off point. Both sides had the opportunity to properly seek their goals in litigation, but the circuit court determined that David alone engaged in overtrial. David fails to show that this determination was clearly erroneous.

## CONCLUSION

¶66 We affirm the circuit court's rulings that it had competency to hold a hearing de novo and awarding the challenged attorney's fees to Ann. We reverse the court's ruling modifying monthly maintenance to $3,850, based on the facts as they existed when the court issued its ruling in February 2023, and remand for further proceedings on that topic.

*By the Court*.—Order affirmed in part; reversed in part and remanded.